

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2006

# Martirosov v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2092

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Martirosov v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1717.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1717

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2092

KAREN MARTIROSOV,

Petitioner

v.

*ALBERTO R. GONZALES, Attorney General of the United States,

Respondent

*Substituted pursuant to Rule 43c, F.R.A.P.

On Appeal from an Order entered by
The Board of Immigration Appeals
No. A95-462-706

Submitted Under Third Circuit LAR 34.1(a)
September 30, 2005

Before: ALITO and AMBRO, Circuit Judges,
and RESTANI,** Chief Judge

(Opinion filed    January 25, 2006 )

OPINION

_____

** Honorable Jane A. Restani, Chief Judge, United States Court of International
Trade, sitting by designation.

AMBRO, Circuit Judge

Karen Martirosov petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming without opinion the denial by an immigration judge ("IJ") of Martirosov's application for asylum and withholding of removal, and his request for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). The IJ concluded that Martirosov had not sustained his burden of proving past persecution or a well-founded fear of future persecution as required by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(42)(A), or torture as defined in the CAT. For the reasons that follow, we deny the petition.

## I. Facts and Procedural History

Because we write for the parties, we only briefly recount the relevant facts. Martirosov, in his mid-30s, is from Azerbaijan and is currently a citizen of Ukraine. He is ethnically Armenian and his wife, whom he married in 2000, is half Armenian and half Azerbaijani. Martirosov entered the United States with a non-immigrant visa on May 15, 2001, which he overstayed. In May 2002 he filed with the INS an application for asylum, withholding of removal, and protection under the CAT. He amended this application in January 2003 to include claims of persecution based on national origin and membership in a particular social group.

2

According to Martirosov's amended asylum application, he and his family left Azerbaijan in 1989 and entered Ukraine as refugees. They settled in the eastern city of Donetsk, which has a large Armenian population. He recounts numerous alleged acts of discrimination, harassment, and violence directed at him and his family in Ukraine. Martirosov states that Ukrainians used ethnic slurs to refer to him and his family, and that his father and brother were beaten in 1992. His brother died in 1996 from a blood clot, which Martirosov attributes to this beating. He also alleges that he was repeatedly harassed by the police and taken into custody "at least 27 times," during which the police would beat him, deny him food, water, and the use of a toilet, and extort money from his family to secure his release. They would then, according to Martirosov, force him to sign a form stating that he had been treated humanely and had no complaints.

In 1998 Martirosov and his fiancée opened a bakery in Donetsk. He alleges he was forced to pay a higher licensing fee than was normally charged in order to open this business, which he attributes to his ethnicity. He also states that his business was vandalized "several times" and anti-Armenian graffiti was painted on the walls. He married his fiancée in 2000, and shortly thereafter she was detained by police who, according to Martirosov, attempted to rape her. Throughout these incidents, Martirosov states he did not complain to the authorities or seek help because "[w]e knew that if someone of Caucasian origin filed a complaint against the militia the repercussions were severe — such person would be severely beaten up and could be charged with a serious

3

crime on the basis of false accusations." He further alleges receiving numerous threatening telephone calls and being visited by "one huge Ukrainian" in November 2000 who demanded that he abandon his business and threatened to kill Martirosov's child if he did not comply. (Martirosov had no children at that time.)

On May 15, 2001, Martirosov came to the United States, ostensibly to purchase baking equipment for use in his business. Shortly after his arrival, he alleges that he received a letter from his wife, who was by then pregnant, stating that intruders had broken into the bakery, vandalized the premises, and beaten her, as a result of which she miscarried. Martirosov states that he told his wife to sell the business. When she was unable to find a buyer, he alleges that his wife simply abandoned the property. He did not return to Ukraine and sought asylum in the United States.

At his hearing before the IJ, Martirosov's testimony was generally consistent with the allegations contained in his amended asylum application. In addition, he testified he was forced to pay bribes to numerous city officials to keep his business open, and clarified that his bakery was only vandalized twice. He also testified that the "huge Ukranian" who threatened him did so on two occasions, and both times the man demanded $500, which Martirosov paid. The IJ inquired about the whereabouts of the letter in which Martirosov's wife told him about the miscarriage, and Martirosov's counsel stated that he did not have it but assumed that the judge had been provided with a copy because the letter had been submitted to the INS. The judge informed counsel that

4

this was an unwarranted assumption, but counsel did not offer to provide the court with a copy of the letter.

Following this hearing, the IJ rendered an oral decision denying Martirosov's application for asylum and withholding of removal, and his request for protection under the CAT, but granting him voluntary departure. The IJ found that some of Martirosov's testimony relating to discrimination and harassment by Ukrainian authorities was credible but that this conduct did not rise to the level of persecution. Moreover, the IJ concluded that Martirosov did not establish that the Ukrainian government was unwilling or unable to protect him from crimes, and found that his testimony regarding the vandalism of his business and subsequent extortion was not credible, largely because "none of those problems [is] documented in any way [because Martirosov] has not provided any type of corroboration for this alleged extortion attempt by this individual or even the instances of vandals hurting the respondent's store." The IJ also questioned Martirosov's testimony regarding the beating of his wife and her subsequent miscarriage, noting that Martirosov did not provide the letter to the court and "question[ing] [Martirosov's] contention that if his wife had suffered this type of assault [he] would then remain in the United States for another year living with a friend trying to figure out what to do." The IJ further noted that the facts alleged by Martirosov, even including those that were not credible, did not rise to the level of persecution, nor did they rise to the level of torture.

Martirosov appealed to the BIA, which summarily affirmed the immigration judge without opinion on March 23, 2004.  He then timely petitioned for review to our Court.

## II.  Standard of Review

Because the BIA summarily affirmed the IJ's decision without opinion and adopted that decision as the final agency action, we review the IJ's decision directly.  Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002).  We review the IJ's factual findings, including his determination of whether Martirosov was subject to persecution or has a well-founded fear of persecution, under a substantial evidence standard.  Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004).  The same standard applies to the IJ's credibility determinations.  See Cao v. Att'y Gen. of U.S., 407 F.3d 146, 152 (3d Cir. 2005) ("The credibility determination, like all IJ factual findings, is subject to substantial evidence review.").  In conducting this analysis we consider the record as a whole and shall reverse only if "'[a] reasonable adjudicator would be compelled to conclude to the contrary.'"  Shardar, 382 F.3d at 323 (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III.  Analysis

The Government maintains, first, that we need not consider Martirosov's claim that the IJ erred in faulting him for not providing corroborating evidence.  In the Government's view, the IJ's decision rested on the conclusion that, accepting Martirosov's allegations as true even without corroboration, the adverse treatment he suffered did not rise to the level of persecution.  Martirosov has not challenged this

6

decision and therefore, according to the Government, any hypothetical corroboration error would be rendered harmless because an independent ground of decision remains unchallenged. Second, the Government claims we cannot review Martirosov's argument that he established a "pattern and practice" of persecution against Armenians in Ukraine because he did not appeal this issue to the BIA and therefore has not exhausted his administrative remedies as required by 8 U.S.C. § 1252(d)(1).

We agree with the Government on both points. In his appeal to the BIA, Martirosov alleged error on four grounds: (1) the IJ's credibility determinations were not supported by substantial evidence; (2) the IJ erred in determining that the lack of corroboration justified adverse credibility findings; (3) the IJ erred in concluding that the adverse treatment to which Martirosov credibly testified did not amount to persecution; and (4) the IJ based his evidentiary findings on inappropriate speculation and conjecture. Martirosov's appeal to the BIA did not allege any error related to the IJ's failure to find that background conditions in Ukraine established a pattern and practice of persecution against Armenians. He has therefore not exhausted his administrative remedies as required by § 1252(d)(1), and we are consequently without jurisdiction to hear his appeal on this ground. See, e.g., Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003).

Likewise, we agree with the Government that the IJ's finding that Martirosov's testimony, including the portions that the IJ found not credible, did not amount to persecution obviates any need for us to consider the corroboration issue. Martirosov has

7

not petitioned for review of the IJ's determination that, even accepting all of his testimony as true, he did not prove that he suffered or had a well-founded fear of persecution as we have defined the term. See Li v. Att'y Gen of U.S., 400 F.3d 157, 167 (3d Cir. 2005) (defining persecution as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom" (internal citation and quotation marks omitted)). His failure to petition for review on this ground means the issue is waived. See Singh v. Gonzales, 406 F.3d 191, 196 n.5 (3d Cir. 2005). Therefore, even assuming Martirosov is correct that the IJ's corroboration requirements constituted error, that error is harmless because, even accepting all of Martirosov's testimony as true and credible, the IJ found that he was not persecuted and did not have reason to fear persecution. Martirosov has essentially conceded this finding by not challenging it on appeal, and we are therefore constrained to deny his petition and affirm the BIA's decision.

*       *       *

For the foregoing reasons, we deny the petition for review.