

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2006

# Wei v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1465

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Wei v. Atty Gen USA" (2006). *2006 Decisions*. Paper 1483.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1483

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-1465
_____

ZHIQIAN WEI
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
Respondent
_____

On Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A95-144-128)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 25, 2006

Before: RENDELL and STAPLETON, Circuit Judges
and GILES[*], District Judge

(Opinion Filed March 3, 2006)

_____

OPINION OF THE COURT
_____

GILES, District Judge:


I. Introduction

Petitioner, Zhiqian Wei, a 51 year-old female native and citizen of the People's

Republic of China, seeks review of a final order of removal issued by the Board of

Immigration Appeals ("BIA") which affirmed the decision of an Immigration Judge

("IJ") denying asylum, withholding of removal, and relief under Article 3 of the United

_____

[*]Honorable James T. Giles, District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

1

Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). For the reasons that follow, the court denies the petition for review.

## II. Factual Background and Procedural History

Petitioner entered the United States in January 2001, having been admitted as a non-immigrant with authorization to remain for one year until January 2002. She had accepted an invitation to attend a meeting concerning what she claimed was work-related research. She overstayed her visa without authorization. During removal proceedings, she conceded removability. However, she filed an application for asylum, withholding of removal, and protection under the CAT.

Based on an adverse assessment of Petitioner's credibility and a determination that she did not establish that she has a reasonably objective fear of persecution on account of religion or political opinion should she return to China, the IJ denied Petitioner's applications for asylum and withholding of removal. Moreover, the IJ found that Petitioner did not establish eligibility for relief under the CAT because she did not present evidence in support of her burden to establish that it is more likely than not that she would be tortured if removed to China.

Petitioner appealed the IJ's decision to the BIA. On June 29, 2004, the BIA affirmed the IJ's ruling without issuing an independent opinion under 8 C.F.R. § 1003.1 (e)(4). Petitioner timely filed this petition for review.

Petitioner's application recites that she fears persecution by the Chinese government based on her political opinion and membership in a particular social group, that is, a group of practitioners and believers in the principles of qigong. According to Petitioner, she has been an active and "orthodox" adherent to the spiritual practices of qigong. As such, she believes that there is a form of energy underlying all material and immaterial things. She maintains that she is a conduit for that energy into a product that she helped develop that determines the gender of a fetus. Petitioner claims that because

2

of the nature of her work the Chinese government would attribute to her religious beliefs and a political opinion opposing its legal ban on gender determination.

In China, Petitioner worked as an assistant to Professor Guoxing Tang. Through the Guilin Jinlan Biological Technological Research Company, Petitioner and Tang claimed to have developed a gender determination product, an herbal pouch, labeled "951 Qian Tian Bao." The pouch was represented as being capable of causing the gender of the fetus to develop into the sex desired by the pregnant woman if she carried a male pouch or a female pouch outside her body within forty days of conception. No ingestion of any medicine or other products was required. Petitioner testified that the product was never tested or approved by any governmental agency in China. The herbal pouch sold for approximately 10,000 Renmindi, which is the equivalent of $1,220 to $1,230 U.S. dollars.

Discovering the gender of the fetus prior to the birth was not part of the method promoted by Petitioner and Tang. Petitioner testified that if a pregnant woman using the herbal pouch chose to find out the gender of the fetus prior to delivery, she could do so through an ultrasound or sonogram. However, the company did not direct that clients undergo such procedures.

Petitioner claimed that she and Tang developed the gender determination herbal pouch through their knowledge of qigong philosophy. According to Petitioner, through qigong the herbal pouch harnessed a universal "force" to determine the gender of a fetus. She stated that she and Tang "use[d] qigong to transfer...the materials in the medicine," of the herbal pouch. Tang testified that Petitioner acted as a conduit of the qigong signal or force and that she was the only one who could assist him in development of the herbal pouches.

At the hearing before the IJ, Petitioner testified that she and Tang are opposed to abortion and that their work and research would actually help to reduce abortions by expectant Chinese couples who otherwise would not be able to control the gender the fetus. Petitioner maintains that their work and research implicate China's family planning

3

policy. She represented that the Chinese government adopted a set of regulations prohibiting gender determination activities, and that the regulations were intended to persecute qigong practitioners and persons engaged in gender determination work and research. The record includes a translation of a portion of the official regulation which recites that the family planning policy prohibits gender differentiation and privately obtained abortions based on the sex of the fetus.

Petitioner averred that she received a letter from her sister in China notifying her that on August 20, 2001, two employees of the Guilin Jinlan Company were arrested, that the Chinese government confiscated equipment and products relating to their gender determination work, and that it closed the company. She testified that she was later notified by one of her colleagues that he was released from custody only after he "confessed to the government" that she and Tang were responsible for the research and work conducted by the company. She also testified that, to her knowledge, the Chinese government has not issued a warrant for her arrest.

To corroborate her claims, Petitioner presented testimony from her colleague, Tang. Both Petitioner and Tang entered the United States on the same date. They also filed for asylum on the same date and based their claims for asylum and withholding of removal on the same set of circumstances, that is, fears of persecution because of regarding gender determination research and work done in China. In Tang's case, an asylum officer granted his application for asylum.

Petitioner argues here that the IJ erred in discrediting her credibility based on the lack of a scientific basis for her claims. She also asserts that the IJ failed to afford adequate weight to the Asylum Office's determination that her colleague, Tang, was eligible for asylum. Lastly, she asserts that the IJ erred in finding the interference of Chinese regulations with her research and commercial enterprise does not constitute persecution.

4

III. Jurisdiction and Standard of Review

The Court has jurisdiction to review final orders of removal pursuant to 8 U.S.C. §1252(a)(1). Where the BIA defers to the decision of the IJ without an opinion, we must review the decision of the IJ to assess whether the BIA's decision was appropriate. Dia v. Ashcroft, 353 F.3d 228, 245 (3d Cir. 2003); Abdulai v. Ashcroft, 239 F.3d 542, 548-49 (3d Cir. 2001). The scope and standard for review of a final order of removal is put forth in 8 U.S.C. §1252(b)(4), which provides that the court of appeals shall decide the petition based only upon the administrative record on which the order of removal is based.

To be eligible for asylum, an applicant must be a "refugee" within the meaning of the Immigration and Nationality Act § 101(a)(42)(A). See 8 U.S.C. § 1101(a)(42)(A). A "refugee" is a person who is "unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of that country because of [his or her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Id.

An asylum applicant bears the burden of proving statutory eligibility by demonstrating that he or she has suffered past persecution or that he or she has a well-founded fear of future persecution. 8 C.F.R. § 208.13(b). The applicant can establish a well-founded fear of future persecution by showing that she has a genuine fear, and that a reasonable person in her circumstances would fear persecution if returned to her native country. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002); Elnager v. INS, 930 F.2d 784, 786 (9th Cir. 1991). The applicant must show "a subjective fear of persecution that is supported by objective evidence that persecution is a reasonable possibility." Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003) (quoting Chang v. INS, 119 F.3d 1055, 1066 (3d Cir. 1997)).

Whether an applicant has demonstrated a well-founded fear of future persecution and qualifies for asylum, withholding of removal, or relief under CAT, is generally a factual determination, which this court will review under the substantial evidence standard. Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004); Dia, 353 F.3d at 239

5

(holding that "[i]f a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence"); Gao, 299 F.3d at 272; Abdille v. Ashcroft, 242 F.3d 477, 483 (3d Cir. 2001). This court has held that "substantial evidence is more than mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Senathirajah v. INS, 157 F.3d 210, 216 (3d Cir. 1998). Under the substantial evidence standard, an IJ's finding must be upheld by the reviewing court unless "the evidence not only supports" a contrary conclusion, "but compels it." INS v. Elias-Zacharias, 502 U.S. 478, 481 n.1 (1992).

An applicant further has the burden of supporting his or her asylum claims through credible testimony. Abdille, 242 F.3d at 482. An IJ's credibility determination will be afforded substantial deference by a reviewing court where it is grounded in evidence in the record and where the IJ provides specific cogent reasons that bear a "logical nexus" to his or her determination. See Gao, 299 F.3d at 276. Adverse credibility determinations will be sustained "unless ...no reasonable person would have found the applicant incredible." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004); Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998).

IV. Discussion

The IJ's determination that Petitioner failed to satisfy her burden to prove that she is eligible for asylum, withholding of removal, and protection under the CAT was based on the findings that Petitioner's claims were not credible; that the corroborative evidence she offered was entitled to only minimal weight; and that Petitioner did not establish that she has an objectively reasonable well-founded fear of persecution, or that it is more likely than not that she will be tortured if she returns to China.

The record evidence does not compel a conclusion contrary to that reached by the IJ and subsequently affirmed by the BIA.

6

A. Eligibility for Asylum

Petitioner does not claim that she was subject to past persecution.  Rather, her petition for asylum was based on events that occurred in China after she arrived in the United States.  In the absence of past persecution, Petitioner's burden was to prove that she had a genuine subjective fear of future persecution if she were to return to China, and that the fear was objectively reasonable.

Petitioner claims that she fears future persecution by the Chinese government because of her involvement in research and promotional activities surrounding development of the gender determination herbal pouch.  Specifically, she claims to fear arrest upon return to China because she is one of the principals of the Guilin Jinlan Biological Technological Research Company through which she and Tang developed and sold the herbal pouches.  In addition, Petitioner claims that the Chinese government has adopted a set of regulations to outlaw gender determination activities.  She contends that the policy is persecutory because it interferes with her "commercial enterprise" and will curtail her ability to work in her chosen field if she returns to China.

An applicant's credible testimony is the primary means of establishing subjective fear.  Petitioner takes strong issue with the IJ's adverse credibility determination.  However, we do not have to review the IJ's credibility findings.[1]  We find sufficient for affirmance the IJ's conclusion that the evidence offered by Petitioner did not establish that she has an objectively reasonable well-founded fear of persecution.[2]

---

[1] The IJ inferred from the price of the gender determination pouch and the spiritual, non-scientific basis for its effectiveness that the Petitioner and her colleague her engaged in "blatant trickery," "a consumer rip-off," and "promoting the use if magic in a pouch" that "quite clearly smacks of deception."  App. at 8,10.  In the IJ's assessment, the Petitioner's activities, along with the "general disdain for traditional scientific beliefs" that the IJ perceived in the belief that these pouches could determine gender, undermined the credibility of Petitioner and Tang.  App. at 7.

[2] Because we do not have to review the IJ's credibility findings in reaching our decision, affirmance of the remainder of the IJ's decision should not be taken as a conclusion that Petitioner was involved in any form of criminal activity, fraudulent business practices, or intentional deception of purchasers of the gender determination pouches while in China, or that

7

The IJ properly concluded that "there is no evidence other than [Petitioner]'s speculation that the regulatory interference with gender determination activities is intended to persecute [her] on any protected ground." The relevant part of the State Department's China Country Report on Human Rights Practices for 2001 states that the purpose of China's regulations forbidding sex determination activities, such as the use of ultrasound to determine the gender of a fetus, is to prevent the termination of pregnancies when it is determined by the parents that the fetus is not of the desired gender. Because of the traditional Chinese preference for male children, the policy is intended to curtail the termination of a fetus found to be female.

While China's family planning policies have been found to constitute persecution in instances where these policies, such as the one-child quota, have resulted in forced termination of pregnancies or sterilization, the IJ duly noted that such persecution is not the case here and that Petitioner lacks the standing to assert such a claim. She is not a pregnant woman or part of a couple that has been forced to abort a fetus, that seeks the right to abort a pregnancy voluntarily, or that desires the determination of the gender of a fetus.

The IJ also opined that Petitioner presented no evidence that the regulation violates or interferes with the practice or belief in qigong. According to the Country Report, unapproved religious groups, including nontraditional groups, continue to experience varying degrees of official interference, harassment, and repression. It reports that Chinese authorities have continued to oppose groups considered to be cults, including qigong groups, some of which have followings comparable to that of the Falun Gong spiritual movement that was officially banned by the Chinese government in 1999. However, enforcement of China's family planning regulations are not targeted at curtailing political opinion, religious beliefs, or any particular social group. The Report

---

her work and activities surrounding gender determination show that she is an advocate of sex-selective abortion.

8

does not conclude that any family planning regulations, specifically those banning gender determination through methods such as ultrasound and sonogram, were calculated to persecute qigong practitioners or that they have been utilized to persecute Chinese citizens based on their religion. Indeed, according to the Report, the regulations were promulgated to prevent voluntary abortion and infanticide. Thus, they are entirely consistent with Petitioner's purported opposition to abortion.

In response to Petitioner's allegation that Chinese family planning regulations concerning gender determination interfered with her commercial enterprise, the IJ further concluded that there was no evidence that the regulations interfered with Petitioner's profession, and no evidence that she could not work elsewhere in China to support herself.

The IJ's conclusion that the evidence offered by Petitioner also does not support a finding that she has a genuine subjective fear of persecution is itself sufficiently supported by the record. The primary premise of Petitioner's persecution claims is that her research on gender determination and development of the herbal pouch is grounded in her belief and practice of qigong. Specifically, she claims to fear arrest upon her return to China because she is one of the principals of the gender determination business. However, there is no record evidence that China's family planning regulations are targeted at qigong practitioners, generally, or at Petitioner and her herbal pouch commercial enterprise, specifically.

Petitioner did not offer evidence that qigong has a specific policy or practice relating to gender determination. The IJ opined that "[Petitioner] put little effort into establishing independent or objective evidence of her belief in qigong, or establishing that qigong would contemplate gender determination as a fundamental premise or practice that would further belief in qigong, or into establishing that her research and activities in China relate to qigong..." Indeed, Petitioner testified that she has actively practiced qigong for thirty years without incident with the Chinese government.

Petitioner also complains that the IJ gave no weight to the positive assessment of

9

Tang's asylum application by the Asylum Office. The IJ reasoned that the Asylum Office's decision was the product of a non-adversarial process separate from the Immigration Court proceeding and that that Office is not a precedent establishing entity. Thus, the asylum officer's favorable assessment of Tang's application formed no basis or precedent upon which to decide this case. We agree. The similarity of Tang's circumstances to Petitioner's does not dictate the same conclusion in assessing Petitioner's application.

The court finds that substantial evidence supports the IJ's determination that Petitioner did not establish that she has an objectively reasonable well-founded fear of persecution. Therefore, she is not eligible for asylum.

B. Eligibility for Withholding of Removal and Relief Under the Convention Against Torture

The threshold for establishing eligibility for withholding of removal and eligibility under the CAT is even higher than that for establishing entitlement to asylum. See Senathirajah v. INS, 157 F.3d 210, 215 (3d Cir. 1998); 8 C.F.R. § 208.16(c)(2). To be eligible for mandatory withholding of removal, an applicant must show a "clear probability" that his or her life or freedom would be threatened if he or she is deported. Lin v. INS, 238 F.3d 239, 244 (3d Cir. 2000); 8 C.F.R. § 208.16(b). "The question under that standard is whether it is more likely than not that the alien would be subject to persecution." INS v. Stevic, 467 US 407, 424 (1984). Because this standard is more precise than the asylum standard, if an applicant fails to establish the well-founded fear required for a grant of asylum, "he or she will, by definition, have failed to establish the clear probability of persecution" standard for withholding of removal. Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d. Cir. 2003). Having concluded that substantial evidence supports the IJ's denial of asylum, we find the IJ also properly denied withholding of removal.

To obtain relief under the CAT, an applicant must establish "that it is more likely

10

than not that he or she would be tortured if removed to the proposed country of removal." Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002); 8 C.F.R. § 208.16(c)(2). Substantial evidence also supports the IJ's decision denying relief under the CAT. The record does not demonstrate any probability that it is "more likely than not" that Petitioner would be tortured if she returns to China.

## V. Conclusion

For the reasons set forth above, we deny the petition for review.