

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-14-2006

# Zira v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4821

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Zira v. Atty Gen USA" (2006). *2006 Decisions.* Paper 96.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/96

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4821

_____

AJTASH ZIRA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A97-835-852)
(Honorable Annie S. Garcy, Immigration Judge)

_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2006

Before:  FUENTES and VAN ANTWERPEN, <u>Circuit Judges</u> and
PADOVA,* <u>District Judge</u>.

_____

*Honorable John R. Padova, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

OPINION OF THE COURT

PADOVA, District Judge.

Ajtash Zira, a native and citizen of Albania, appeals the denial of his request for asylum, withholding of removal and relief under Article III of the Convention Against Torture ("CAT"). Zira claims he suffered persecution at the hands of the Albanian Socialist Party, the successor to the Albanian Communist Party, because of his activities on behalf of the Albanian Democratic Party. Because we find substantial evidence in the record to support the IJ and BIA's adverse credibility findings and agree that Zira did not demonstrate that he is entitled to asylum, withholding of removal, or CAT relief, we will deny Zira's petition for review.

I.

Zira was born on May 24, 1986 in Peshcope, Albania. He lived there until 2000, when he moved with his family to the Albanian capital, Tirana. He left Albania on October 9, 2003, and traveled through eight countries, before entering the United States at Laredo, Texas on December 23, 2003. Zira was served with a Notice to Appear for a removal proceeding. His case was eventually transferred to Newark, New Jersey, where Zira went

to live with an uncle. At his third hearing before an IJ, Zira appeared with counsel, admitted the factual allegations contained in the Notice to Appear, and conceded removability. He declined to designate a country of removal, and the IJ designated Albania for him. On September 27, 2004, Zira applied for asylum, withholding of removal and withholding under the Convention Against Torture (CAT).

In his application, Zira alleged prior persecution and a reasonable fear of future persecution should he be returned to Albania based on both political opinion and his membership in a particular social group, claiming he was repeatedly threatened with death during the period of February to October 2003, if he attended meetings of the Albanian Democratic Party. He claimed that he was personally targeted because his father, whom Zira alleges was jailed for his beliefs and is currently in hiding, and his grandfather, whom Zira claims was executed for his political views, were both prominent members in the Albanian Democratic Party.

The IJ found that Zira's testimony at the evidentiary hearing contradicted the information contained in his asylum application in several significant aspects. Zira claimed at the hearing that his family left the town of Peshcope in 2000 because they had been threatened by police and gangsters who were interested in finding his father. He later testified that his father, who was a member of the police force, was threatened by people whom his father had arrested. He claimed his father lost his job as a police officer when the Socialists came to power in 1997, and that he could not find work because of his political

affiliation. But Zira's application documents indicate his father left the force voluntarily because of problems he faced from criminals.

Zira testified that in February 2003, "they" (probably either the police or the Socialists, but he did not specify) abducted him on his way home from school, put him in a car, covered his head and drove him somewhere, put him in a room, held him for an hour and a half and demanded to know the whereabouts of his father. He admits, however, that the abductors never followed him home or came to his home to find his father, even though the two lived in the same home, and that the abductors never bothered his mother or brother, even though they also lived in the home.

Zira testified that his father was in hiding after 1997 and would only leave his home at night. However, the application documents indicate that Zira's father was attending the Albanian Police Academy from 1995 until his graduation on February 29, 2000 as a "High Specialist of Police."

Zira was also confronted with the inconsistency in his testimony regarding when he was first threatened. Although his application alleged threats only during the period of February to October 2003, he claimed on direct examination that during his first year of high school at age 15 (i.e., in 2001), he was threatened at school that his house would be bombed. He testified that threats from the police, which occurred "at least thirty times," happened "especially in Peshcope." But he also testified that he moved to Tirana in 2000. If the threatening began when he was age 15 in the year 2001, by his own account he would already

have moved out of Peshcope. The IJ recognized the discrepancy and asked Zira in which city the abductions and threats occurred. He then stated the threats occurred "only in Tirana."[1]

In her oral decision denying asylum, withholding of removal and relief under the CAT, the IJ focused upon the discrepancies between the asylum application and Zira's testimony at the evidentiary hearing, finding:

> respondent's testimony in Court does not even closely resemble his asylum application with regard to problems that he has had in the past or his fears in the future with the sole exception of his description of his family background. About the only thing that is consistent is the respondent's testimony that both his father and his grandfather were involved in the Democratic Party in Albania, that his father served as a police officer in the past and, in addition, that his father has been threatened in the past because he was a police officer.

The IJ found that, while Zira claimed in the application that he was threatened because of his own political activities, he did not mention his own activities at all at the hearing. Rather, all of his testimony concerned threats due to his father's activities. The application, meanwhile, never mentioned (1) the thirty incidents of harassment or (2) the two abductions.

---

[1]On cross-examination, Zira was confronted with the fact that he did not mention the earlier threatening in Peshcope in his asylum application, leading the IJ to caution him,
> Mr. Zira, I don't know why you're playing dumb here, okay. You've never written it down. You've never told me about any kind of police problems ever before. . . . You haven't written down anything about your police problems anyplace, anywhere in your file before. . . . [W]hy don't you just explain why you've never explained to us any kind of problems that you had with the police until you came here in Court today? . . . I told you, everything important about your application had to be included in the application.

Zira's only response was "I guess in the mix-up, they were not all written in. It's not that I saved them for today." When asked why he didn't mention the thirty incidents of harassment on the application, he said "I guess I didn't recall and, and they weren't written."

The IJ found this testimony completely incredible because it departed from the asylum application. She also cited his inherently inconsistent testimony and found incredible his explanation that he forgot about the incidents when he was preparing the application. The IJ also found "inherently unbelievable" that the police would abduct Zira to learn of his father's whereabouts when they lived in the same home, but did not approach his other relatives or simply follow Zira home.

The IJ also found inconsistent: (1) Zira's claim that his father was in hiding when the documents showed he was attending the police academy; and (2) his claim that his father was harassed by the police when the application documents indicated his father was being harassed by Mafias, terrorists and criminals. Accordingly, the IJ concluded that she was convinced by Zira's lack of credibility that he was never threatened by any public official in Albania, and that he was ineligible for asylum and for withholding of removal, which, under 8 U.S.C. § 1231(b)(3)(A), has a higher burden of proof than the asylum application. The IJ also found Zira ineligible for relief under the CAT.

## II.

Because the BIA summarily adopted the opinion of the IJ with respect to the IJ's credibility determination, we review the IJ's opinion. See Wang v. Attorney Gen., 423 F.3d 260, 267 (3d Cir. 2005). We review adverse credibility determinations under the

substantial evidence standard.  See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

Accordingly, we uphold the IJ's determination if the decision is "supported by reasonable,

substantial, and probative evidence on the record considered as a whole. . . ." INS v. Elias-

Zacarias, 502 U.S. 478, 481 (1992).  We cannot overturn a credibility finding simply because

we would reach a different opinion; rather, we must find that "any reasonable adjudicator

would be compelled to conclude the contrary." Shardar v. Ashcroft, 382 F.3d 318, 323 (3d

Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)).  Although our review of a credibility finding

is generally deferential, "that deference is expressly conditioned on support in the record, and

deference is not due where findings and conclusions are based on inferences or presumptions

that are not reasonably grounded in the record." Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir.

2003) (en banc) (internal citations and quotation marks omitted).

In making an adverse credibility determination, the IJ must provide "'specific, cogent

reason[s]' why the applicant is not credible." Gao, 299 F.3d at 275-76 (citation omitted).

Minor discrepancies that do not go to "the heart of the . . . claim" do not merit an adverse

credibility finding.  Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004) (citation

omitted).[2]  The IJ's conclusions must "flow in a reasoned way from the evidence of record"

_____

[2]The Real ID Act of 2005 changes the standards governing credibility determinations, stating that those determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Pub. L. 109-13, div. B, § 101(a)(3), 119 Stat. 231, 303 (to be codified at 8 U.S.C. § 1158(b)(1)(B)(iii)).  This provision, however, only applies to aliens who applied for asylum, withholding of removal, or other relief after May 11, 2005, the effective date of the Act. See id. § 101(h)(2), 119 Stat. at 305.  As Zira applied for relief from removal in 2004, this provision does not apply to our

and cannot be "arbitrary and conjectural in nature." Caushi v. Attorney Gen., 436 F.3d 220, 226 (3d Cir. 2006) (quoting Dia, 353 F.3d at 250).

III.

Based on the administrative record, we hold with regard to the asylum and withholding of removal claims that a reasonable fact finder could determine that Zira was not credible in light of the plain inconsistencies contained in his application and testimony. The inconsistencies go to the heart of the claim because they relate to whether he was mistreated at all in Albania, and which groups mistreated him. In his application, Zira alleged that his own political activities led to his being persecuted. His testimony, however, concerned only his father's alleged political persecution, which Zira never mentioned in his application. He claimed that the police and gangsters affiliated with the Socialist Party harassed his family, but he also stated that his father was being harassed by criminals he had previously arrested. Zira's testimony was also internally inconsistent regarding the dates of his alleged persecution and, to a great extent, was simply nonsensical. He claimed his father was fired from his job as a police officer and went into hiding in 1997, during the same time period that the documents showed his father was attending the government's own police academy. He claimed to have been abducted by persons searching for his father while the two lived in

review of his claims.

the same home, but admitted that the abductors never sought his father at their home.

In addition, we agree that Zira has not established that he is entitled to relief under the CAT. See 8 C.F.R. § 1208.16(c). To be entitled to relief under the CAT, the petitioner must establish that it is more likely than not that he will be tortured upon his return. Id. Torture is defined as:

> [A]ny act by which severe pain or suffering . . . is intentionally inflicted on a person for such purposes as obtaining from him or her . . . information or a confession, punishing him or her for an act he or she . . . has committed or is suspected of having committed, or intimidating or coercing him or her . . . or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). When determining whether it is more likely than not that a petitioner will be tortured upon his return, "all evidence relevant to the possibility of future torture shall be considered." 8 C.F.R. § 1208.16(c)(3). Relevant evidence may include "[e]vidence of past torture inflicted upon the applicant" and "[o]ther relevant information regarding conditions in the country of removal." Id. Moreover, although a court finds an applicant not credible, it must still consider country conditions to determine whether to grant relief under the CAT. Tarrawally v. Ashcroft, 338 F.3d 180, 188 (3d Cir. 2003). We review the IJ's denial of CAT relief under the substantial evidence standard. Wang v. Ashcroft, 368 F.3d 347, 350 (3d Cir. 2004).

The IJ denied Zira relief under the CAT, finding that because Zira was not credible, his CAT claim was "unworkable." She explained that his lack of credibility convinced her

no public official in Albania or anyone acting with any kind of acquiescence or approval of any public official, ever threatened to torture or persecute Zira, so as to satisfy the requirements of 8 C.F.R. § 1208.18(a)(1). We find the IJ's conclusion was supported by substantial evidence in the record. As Zira makes no specific argument concerning country conditions, we find the IJ's determination that he did not meet his burden under Article III of the CAT was also supported by substantial evidence.[3]

IV.

Upon review of the IJ's decision and the record, we conclude that the IJ's adverse credibility determination was supported by substantial evidence. A reasonable adjudicator would not be compelled to make findings contrary to those made by the IJ. We agree that Zira is unable to prove past persecution or a well-founded fear of future persecution and is not entitled to asylum or withholding of removal under the Act. In addition, we agree with the IJ's findings that Zira is not eligible for relief under the CAT. Accordingly, we will deny Zira's petition for review.

---

[3]Although the IJ did not specifically discuss country conditions in her oral opinion, there was no substantial evidence in the record to support relief under the CAT. The State Department Country Report mentions torture only in the context of police interrogation techniques used against individuals suspected of crimes. There were no known cases, as of the date of the Report, of individuals detained for political crimes. Most importantly, the Report adds that although an increasing number of persons have been deported back to Albania, there were no reports or evidence of any mistreatment of returnees at the hands of police. The United Kingdom Home Office Report states that the Albanian Democratic Party remains a legitimate political party that is free to campaign and carry out lawful activities. It adds that membership in the Party is unlikely to lead to persecution by the current government or the police.