

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-24-2004

# Shardar v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 03-2110

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Shardar v. Atty Gen USA" (2004). *2004 Decisions.* Paper 356.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/356

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

———

No. 03-2110

———

MOHAMMAD ARIF SHARDAR,

Petitioner

v.

JOHN ASHCROFT, ATTORNEY
GENERAL OF THE UNITED STATES

Respondent

———

On Petition for Review of an Order of
the Board of Immigration Appeals

(No. A72-779-408)

———

Submitted Under Third Circuit LAR
34.1(a) June 24, 2004

Before: NYGAARD, McKEE and
CHERTOFF, Circuit Judges.

(Filed: August 24, 2004)

OPINION

———

STEPHEN A. TRAYLOR
Traylor & Traylor
20 Nassau Street
Suite 204
Princeton, NJ 08542

Counsel for Petitioner

PETER D. KEISLER
Assistant Attorney General
Civil Division
LINDA S. WENDTLAND
Assistant Director
Office of Immigration Litigation
MICHELLE R. THRESHER
Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044

Counsel for Respondent

CHERTOFF, Circuit Judge.

Mohammad Arif Sardar appeals the decision of the Board of Immigration Appeals (BIA), affirming the Immigration Judge's (IJ) denial of his application for asylum and withholding of deportation, and denying his motion to reopen the proceedings for consideration under Article 3 of the United Nations Convention Against Torture (CAT). For the reasons elaborated below, we will deny the petition for review in its entirety.

I.

Shardar is a native and citizen of Bangladesh who entered the United States on August 26, 1992, using a false passport. Shardar applied for asylum in 1992, alleging he was persecuted on the basis of his political opinion for his membership in the Jatiyo political party. Jatiyo is the party of Army Chief of Staff General H.M. Ershad, who seized power and declared himself President in December 1983. In the face of widespread opposition, Ershad was forced to resign in December 1990, and in a February 1991 election the Bangladesh Nationalist Party (BNP) won a parliamentary plurality and formed the government.

The primary basis for Shardar's asylum claim stems from events surrounding his participation, on January 6, 1992, in an allegedly peaceful demonstration in Jatrabari Square[1] in Bangladesh. Shardar was arrested and charged with having weapons and explosives, allegations that Shardar stated were "[c]ompletely false." A.R. at 174. Shardar testified that following his arrest, he was held in jail and beaten with canes and kicked in the face. While he was beaten his interrogators shouted, "Ershad time is over. Now is, is BNP time." Id. at 168. Shardar claimed he was forced to confess that he had weapons and explosives, and to proclaim that he would never be with the party again, in order to stop the beatings and "save [his] life." Id. at 169.

After three days in the police station and almost six days in jail, Shardar went before a judge. Shardar's father paid for a lawyer. The judge, whom Shardar described as "pretty nice," id. at 170, released him on bail of 50,000 local taka, which his father paid. Following his release, Shardar's father took him to a private medical clinic for nineteen days.

Shardar then went to work for a Chinese restaurant in Dhaka, Bangladesh. He testified that the police came looking for him on several occasions, and therefore he "had to leave the job," his home, and his wife. Id. at 171. Shardar

---

[1] While the Petitioner's brief refers to the location as "Jatrabi Square," this appears to be an error. We adhere to the spelling—"Jatrabari"—used in the Government's brief and police report (discussed below).

2

conceded, however, that the police came after a warrant was issued for his arrest because of his failure to appear in court. Id. at 176-77.

In addition to Shardar's testimony, documentary evidence was introduced, including a police report and "charge sheet" pertaining to his arrest, the record of proceedings in the Court of Chief Metropolitan Magistrate, and an arrest warrant issued on May 20, 1992, providing that Shardar "after having [posted] bail[,] . . . abscond[ed]," id. at 284. Shardar also submitted letters from the clinic where he was treated following his release, his lawyer, an associate from the Jatiyo Party, and an accounting firm. See id. at 274-77.

Of particular relevance is the police report, which characterizes the protestors as violent and suggests Shardar was a leader in the hostile activities. The report explains, in pertinent part:

> [T]hey were delivering defamatory, detractive and slanderous slowgans [sic] against the present Gov[ernment] . . . . We then and there made an importunate entreaty to them not to deliver such types of slowgans [sic] for which they got infuriated and being armed with deadly weapons made a sudden invasion on us. They exploded some bombs at the spot one after another.

Many padestrians [sic] were lethally injured. We to control this predicament [sic] situation used tear gas to disperse them but they became more furious and begun [sic] to throw brick-bats on us. We having found no other way advanced with fortitute [sic] to arrest them and Md. Arif Sardar [sic] accussed No. 1 arrested by us, under whose Leadership this occurrence was occurred and the other skedaddled from the spot . . . .

Id. at 279-80.

On July 22, 1998,[2] the Immigration Judge (IJ) denied Shardar's application for

---

[2] The IJ outlined the reason for the delay between the 1992 application for asylum and the issuance of the decision:

> He applied for asylum . . . in 1992. The application, however, was not granted and instead was referred to this Court for a decision, along with a Notice to Appear issued on October 17, 1997, almost five years later. The Notice to Appear was addressed on the record on December 23, 1997.

A.R. at 83.

3

asylum and withholding of removal, while granting the application for voluntary departure. The IJ concluded that "although the respondent is credible, he has in no way met his burden of proof." Id. at 89. The IJ explained that "[t]here is a complete grand canyon of difference between persecution and a fear of prosecution." Id. The IJ rejected the suggestion that "the only reason he was arrested was because he was a supporter of the Jatiya Party." Id. at 91. Rather, the IJ pointed to the documentary evidence that the demonstration was violent. Noting that Shardar had failed to file newspaper articles or other objective evidence supporting his account of the demonstration, the IJ explained that "[i]t is equally plausible, in fact more plausible than not given the evidence supplied by the respondent, that the respondent had been involved in inciting a demonstration that turned violent and that the police were mad as could be." Id. at 92.

The IJ noted that Shardar did not provide evidence that the judicial process might be corrupted; rather, the State Department report indicates that members of the Jatiyo Party enjoy the same judicial rights as other Bangladeshis. The State Department's 1997 Bangladesh Profile of Asylum Claims and Country Conditions ("1997 State Department Profile") provides, in pertinent part:

> There is some evidence that prominent Jatiyo Party members and/ or supporters . . . were harassed by the BNP Government between 1991 and 1996. These individuals were able to defend themselves in court actions and have the same judicial rights as other Bangladeshis. The harassment experienced by some high level Jatiyo party members is not sufficient to justify the conclusion that Jatiyo Party membership in itself accounted for severe mistreatment.

Id. at 257.

The IJ concluded that while arguably Shardar was persecuted in the past when he was beaten at the police station, "the changed circumstances . . . rebut or defeat any potential presumption of a well-founded fear of future persecution." Id. at 97. The IJ elaborated that "[t]he obvious and evident changed circumstances are that the respondent was released on a bond and obviously the police did respect the respondent and left him alone . . . . The fact that the police came by later in time looking for the respondent . . . is clearly all because the respondent failed to appear in court and the police were executing a warrant . . . ." Id. The IJ also referenced the "1997 State Department Profile" for the proposition that "country conditions for people who are in the Jatiya Party have radically changed." Id. at 95.[3]

---

[3] The "1997 State Department Profile" outlines many of the favorable

On March 21, 2003, the Board of Immigration Appeals (BIA), exercising jurisdiction under 8 C.F.R. § 1003.1(b), affirmed the IJ's decision. The BIA explained that Shardar had failed to meet the burden of proof for establishing asylum because

> [w]hile . . . violence is a feature of the political process in Bangladesh, we have no reason to conclude that the prosecution the respondent may face if he returns to Bangladesh is politically motivated, and there is no reason to find

changes for the Jatiyo Party:

> A Jatiyo Party member of parliament is serving as Minister of Communications and a number of other Jatiyo party members are also serving in the Cabinet. Although still formally held in custody, Ershad took his seat in the new Parliament and participated in its deliberations. He was freed on bail in January 1997. In the summer of 1997, the government issued Ershad a passport and permitted him to travel to Europe and the United States.

A.R. at 255.

> that he would be unable to establish his claimed innocence.

Id. at 2.

Moreover, the BIA denied Shardar's request to reopen the proceeding for consideration under the CAT, concluding that he had "failed to establish prima facie eligibility for relief under the Convention." Id. However, the BIA agreed that Shardar should be entitled to voluntarily depart. Id. at 3.

This Court has jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We conclude that the BIA properly denied (1) the petition for asylum; and (2) the petition to remand the proceedings for consideration under the CAT.

## II.

Shardar argues that the BIA erred in denying his application for political asylum, particularly since the IJ found his testimony credible. The Attorney General has discretion to grant asylum if the petitioner demonstrates that he meets the Immigration and Nationality Act's (INA) definition of "refugee"—that he is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see Dia v. Ashcroft, 353 F.3d 228, 234 n.1 (3d Cir. 2003).

5

"A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution." Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003) (citing 8 C.F.R. § 208.13(b)(1); Abdulrahman v. Ashcroft, 330 F.3d 587, 592 (3d Cir. 2003)). The presumption, however, is rebutted where the Government "establishes by a preponderance of the evidence that the applicant could reasonably avoid persecution by relocating to another part of his or her country or that conditions in the applicant's country have changed so as to make his or her fear no longer reasonable." Abdulrahman, 330 F.3d at 592 n.3.

Whether a petitioner has demonstrated past persecution or a well-founded fear of future persecution is a factual question that is reviewed by this Court under a substantial evidence standard, and will be upheld to the extent it is supported by "reasonable, substantial and probative evidence on the record considered as a whole." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003) (citing Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002)). The scope of review is narrow. "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). That is, "[u]nder the substantial evidence standard, the BIA's findings must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir.

2001).

The fact that, as here, a petitioner's testimony is deemed credible is not determinative. The BIA "may require documentary evidence to support a claim, even from otherwise credible applicants, to meet their burden of proof." Gao, 299 F.3d at 272 (citing Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001)). In this case, the IJ did not merely deny Shardar's claim because of the absence of corroborating evidence. Rather, the documentary evidence that was presented conflicted with Shardar's contention that the demonstration was peaceful.

As the IJ noted, there is a distinction between *persecution* and *prosecution*. "As a general matter, . . . fear of prosecution for violations of 'fairly administered laws'

does not itself qualify one as a 'refugee' or make one eligible for withholding of deportation." Chang v. I.N.S., 119 F.3d 1055, 1060 (3d Cir. 1997) (citations omitted). However, fear of prosecution, even under generally applicable laws, may constitute grounds for asylum or withholding of removal. See id. "[I]f the prosecution is motivated by one of the enumerated factors, such as political opinion, and if the punishment under the law is sufficiently serious to constitute persecution, then the prosecution under the law of general applicability can justify asylum or withholding of deportation." Li Wu Lin v. I.N.S., 238 F.3d 239, 244 (3d Cir. 2001) (citing Chang, 119 F.3d at 1061; see also Fisher v. I.N.S., 79 F.3d

6

955, 962 (9th Cir. 1996) (explaining that there are " two exceptions to the general rule that prosecution does not amount to persecution—disproportionately severe punishment and pretextual prosecution").

In this case, there was substantial evidence to support the conclusion that Shardar has not met his burden of proof for establishing eligibility for asylum. Rather, the evidence supports the conclusion that Shardar was not persecuted on account of his political opinion; rather, he was legitimately prosecuted for participation in a violent political demonstration. Moreover, Shardar failed to establish that the system is so corrupt that if he is prosecuted after returning to Bangladesh, he will be unable to receive fair adjudication and punishment. In fact, even his own testimony suggests that thus far the proceedings against him have been conducted in a fair manner.

Shardar's strongest claim in support of asylum is his testimony, substantiated by the hospital report, that he was severely beaten while in police custody. The evidence indicates these beatings were politically motivated—the perpetrators yelling, "Ershad time is over. Now is, is BNP time." A.R. at 168. Such treatment is, to say the least, extremely troubling. Nevertheless, this evidence alone does not undermine the conclusion that there was substantial evidence to support the denial of his application for asylum.

We cannot disagree with the IJ's conclusion that even if this treatment rises to the level of past persecution, the circumstances have changed such that the presumption of a well-founded fear of future persecution is rebutted. Shardar was released on bail from custody, and there is no evidence suggesting that if he returns for prosecution he will be persecuted on the basis of his political opinion. Moreover, the "1997 State Department Profile" provides substantial evidence in support of the conclusion that the country conditions have changed in Bangladesh, specifically noting that Jatiyo Party members are able to "defend themselves in court actions and have the same judicial rights as other Bangladeshis." A.R. at 257.

Having concluded substantial evidence supports the BIA's denial of asylum, we conclude that withholding of removal was also properly denied. "The standard for withholding of removal is higher than, albeit similar to, the standard for asylum. . . . If [a petitioner] is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal under [the INA]." Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003).

III.

In the alternative, Shardar maintains that the fact that he has established that he was severely beaten in prison and the documentary evidence in the record that shows this is a common practice in Bangladesh prisons should be

sufficient to justify, at the very least, a grant of withholding of removal under the CAT. On June 23, 1999, Shardar filed a motion to remand, requesting that the BIA remand his case to the IJ for consideration under the CAT, which having been passed in 1999 was not effective when the IJ rendered his decision in July 1998. We conclude that the IJ properly denied the motion for reconsideration.

"We review the BIA's denial of the motion to reopen [or remand[4]] for abuse of discretion, 'mindful of the "broad" deference that the Supreme Court would have us afford.'" Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003) (quoting Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001) (citing I.N.S. v. Abudu, 485 U.S. 94, 108 (1988)). "Motions to reopen implicate important finality concerns even when they seek to raise an underlying claim for relief, such as relief under the Convention Against Torture, that is not committed to the Attorney General's

---

[4] We treat the motion styled as a "motion to remand" as a motion to reopen since it requires reopening the proceedings. Notably, the BIA decision characterizes Shardar's motion as requesting that the "proceedings be reopened." A.R. at 2. Cf. 8 C.F.R. § 1003.2(c)(4) (explaining that "a motion to reopen a decision rendered by an Immigration Judge or Service officer that is pending when an appeal is filed, or that is filed when an appeal is pending before the Board, may be deemed a motion to remand").

discretion." Sevoian v. Ashcroft, 290 F.3d 166, 172 (3d Cir. 2002). We conclude that the BIA did not abuse its discretion.

"An applicant for relief on the merits under the Convention Against Torture bears the burden of establishing 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" Id. at 174-75 (quoting 8 C.F.R. § 208.16(c)(2)).[5]

---

[5] "Torture" is defined as follows:

Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8

Thus, "the prima facie case standard for a motion to reopen under the Convention requires the applicant to produce objective evidence showing a 'reasonable likelihood,' that he can establish that he is more likely than not to be tortured." Id. at 175 (quoting In re S-V-, Int. Dec. 3430, 2000 WL 562836, at *3 (BIA May 9, 2000) (en banc)).

In this case, the BIA did not abuse its discretion in determining that Shardar had not met this standard. As outlined above, substantial evidence supports the conclusion that Shardar faces legitimate prosecution, rather than persecution, if he returns to Bangladesh. The evidence does suggest that Shardar suffered beatings in the past. However, the BIA did not abuse its discretion in determining that this treatment did not rise to the level of "torture," or that there is not a reasonable likelihood that Shardar can establish that it is more likely than not he will be tortured if removed.

**\*\*\*\***

For the foregoing reasons, we will deny Shardar's petition for review of the decision of the BIA.

---

8 CFR § 208.18(a)(1).