**Nina LEVIT, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States Respondent.**

No. 03–2748.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 2004.

Decided Dec. 2, 2004.

Matthew D. Baxter, Bespalov & Avrutsky, Huntingdon Valley, PA, for Petitioner.

Linda S. Wendtland, John C. Cunningham, Douglas E. Ginsburg, Lyle D. Jentzer, United States Department of Justice Office of Immigration Litigation, Washington, DC, for Respondent.

Before ROTH, SMITH and WEIS, Circuit Judges.

*OPINION*

WEIS, Circuit Judge.

Petitioner, an ethnic Russian, is a citizen of Moldova. She entered the United States in February, 1994 and was authorized to stay until May 21, 1994. Her daughter is a lawful permanent resident of the United States.

After a hearing, an Immigration Judge (IJ) found petitioner credible but denied her claims for asylum and withholding of deportation. He granted her voluntary departure for a 60–day period. The BIA affirmed the IJ's decision without opinion and granted petitioner a further 30–day period for voluntary departure.

We granted oral argument and our review of the facts will, therefore, be brief.

Petitioner contends that the IJ applied the wrong legal standard to her claim of past persecution by requiring that her nationality be the *sole* reason for her rape by two Moldovans. She argues also that her claim for past persecution is supported by substantial evidence. Furthermore, she

claims that she demonstrated a well-founded fear of future persecution based on her religious beliefs.

Petitioner testified that in 1992 she was abducted by two Moldovan men as she was walking along the Dniester River. She was raped and beaten by the two men who told her that "[w]e are going to do the same to all Russians. We want you out of our country. Get out of here." After further abuse, petitioner managed to escape.

She reported the assault to the police who arrested her attackers. However, as the police officers explained, they could not prosecute the attackers because the area where the attack had occurred was not in their jurisdiction.

The following year, petitioner was arrested and briefly imprisoned for being present at an October 1993 protest, although she had not participated in the activity. She was jailed for four days under degrading circumstances. Petitioner also recounted an incident in which assailants broke into her apartment and attempted to rape her daughter. Her mother and sister were attacked, and her brother died from injuries inflicted by a group of Moldovans who targeted him because of his Russian ethnicity.

Additionally, petitioner recalled that Moldovans commandeered her car and forced her to help smuggle arms into Moldova from Odessa, Ukraine. After the trip, her captors took her, her daughter and a friend back to the petitioner's home and kept them under guard.

In addition to these claims of ethnic-inspired persecution, petitioner contends that she has demonstrated a well-founded fear of future religious persecution based on her membership in Jehovah's Witnesses. The State Department's 1997 Country Report on Moldova states that religious groups are required to register with the government and are prohibited from proselytization, a prime tenet of the Jehovah's Witnesses. Additionally, the Report notes that "[t]he authorities in Transnistria rescinded the registration of two houses of worship of Jehovah's Witnesses in the region; 13 congregations still meet in private homes."

Petitioner testified that the government has subjected Jehovah's Witnesses to more stringent restrictions since she departed from Moldova. For example, she noted that the government prevents the sect from renting property or gathering in groups of more than five people. She said that the police disbanded the Jehovah's Witnesses April 14, 1997 celebration, their sole annual holiday, and imprisoned all of the worshipers. She also commented that the government destroyed Jehovah's Witnesses literature in two German railway cars.

We apply a narrow, deferential standard of review in this case.

> "Whether a petitioner has demonstrated past persecution or a well-founded fear of future persecution is a factual question that is reviewed by this court under a substantial evidence standard, and will be upheld to the extent it is supported by 'reasonable, substantial and probative evidence on the record considered as a whole.'"

*Shardar v. Ashcroft*, 382 F.3d 318, 323 (3d Cir.2004) (quoting *Kayembe v. Ashcroft*, 334 F.3d 231, 234 (3d Cir.2003)). Furthermore, "[i]f a reasonable fact finder could make a particular finding on the administrative record, then the finding is supported by substantial evidence. Conversely, if no reasonable fact finder could make that finding on the administrative record, the finding is not supported by substantial evidence." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir.2003) (en banc).

The IJ applied the correct legal standard to the petitioner's claim of past persecution. In order to prove her claim, peti-

tioner was required to demonstrate that her persecutors were motivated, at least in part, by nationality or religion. But, the IJ wrote,

> "Even if the perpetrators are Moldovans, and even if they hurled in the course of their attacks upon her ethnic slurs to the extent that they knew that she was Russian, the Court cannot find from the facts as related that the attackers were *in any way* attacking her *for any other reason* other than that they had a female victim at hand." (emphasis added).

The IJ did not require ethnicity to be the sole factor. Instead, he determined that it was not a factor at all.

The IJ also rejected the petitioner's past persecution claim because it was not supported by substantial evidence. Similarly, we are persuaded that no reasonable fact finder could have found that petitioner demonstrated a well-founded fear of future persecution because of her religion.

Accordingly, the petition for review will be denied.