

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-18-2007

# Saldeen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1205

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Saldeen v. Atty Gen USA" (2007). *2007 Decisions.* Paper 929.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/929

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-1205

_____

MOHAMED FAHIM SALDEEN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A98-228-625)

_____

Submitted Under Third Circuit LAR 34.1(a)
March 27, 2007

Before:  FISHER, JORDAN and ROTH, Circuit Judges

(Filed: June 18, 2007)

_____

OPINION OF THE COURT

_____

JORDAN, Circuit Judge.

Mohamed Fahim Saldeen, a native and citizen of Sri Lanka, petitions for review of the final order of removal by the Board of Immigration Appeals ("BIA") denying his application for asylum, his application for withholding of removal, and his application for relief under the Convention Against Torture ("CAT"). Saldeen argues that the opinions of the BIA and the Immigration Judge ("IJ") do not provide a sufficient basis for review, and, therefore, the case should be remanded so that a more detailed analysis can be performed. Alternatively, Saldeen contends that the BIA and the IJ erred in concluding that he was not subject to past persecution on account of his political opinions and that he did not have a well-founded fear of future persecution. For the following reasons, we will deny the petition.

I.

Saldeen entered the United States as a non-immigrant on February 23, 2003, and received authorization to remain in the United States until March 20, 2003. He stayed beyond that period, and filed his applications for asylum, withholding of removal, and protection under CAT. On April 12, 2004, Saldeen received notice that he was to appear in removal proceedings.

Saldeen has identified two events as his basis for requesting asylum and withholding of removal. According to his account, the first incident occurred while he was working in Columbo at a printing press owned by his cousin Mohamed Fazeer. Saldeen claims that, although he did not personally support any political party in Sri

2

Lanka, his job involved printing posters and handbills that favored the People's Alliance ("PA") and criticized the United National Party ("UNP"). In December 2001, the UNP won an election and took control from the PA. Saldeen testified that, the day after the election, a group affiliated with the UNP broke into Fazeer's printing press and damaged the equipment. A group of twenty to thirty UNP supporters also attacked Saldeen and Fazeer at the home where they both lived. The group then took Saldeen and Fazeer to a police station and alleged that they were responsible for printing illegal posters attacking the UNP.

Saldeen testified that he remained in police custody for a period of about four days. During the first day, he and Fazeer were held in the same jail cell and beaten by the police. The next day, they were separated. Saldeen stated that the police tied him to a pillar, hit him with leather belts, and used pliers to pull his skin and testicles. He was left tied to the pillar for one day, and then moved to another room. For the remaining two days, Saldeen claims that he was beaten about three to four times each day. Saldeen and his cousin were then released from police custody. Saldeen testified that he did not see a doctor because he went to a "dispensary" and obtained "ointment" and "tablets" that were sufficient to treat his injuries. Saldeen also explained that, even after being released, he continued to receive death threats from the UNP. For that reason, he left Columbo and went to Senkalady to work as a supervisor at a printing press owned by a Mr. Moorthy.

Saldeen's application for asylum and withholding of removal is also based on events that took place while he was working with Moorthy. In July 2002, the Sri Lankan

3

army discovered that one of Moorthy's presses was printing materials for the Liberation Tigers of Tamil Eelam ("LTTE"), a terrorist organization. When Saldeen heard that Moorthy had been arrested, he left his job in Senkalady and returned to Columbo. Shortly thereafter, the Sri Lankan army raided the printing press in Senkalady and found documents supporting the LTTE. Two employees were arrested, and Saldeen learned that the army was reportedly looking for him as well. Saldeen testified that he had no previous knowledge that LTTE materials were being printed at the press in Senkalady. However, because he feared for his safety, in February 2003, Saldeen obtained a visa and left Sri Lanka for the United States.

The IJ denied Saldeen's applications for asylum, withholding of removal, and relief under CAT. With respect to Saldeen's claim that he had been beaten and tortured by the police because he printed anti-UNP posters, the IJ held that Saldeen's testimony was not credible. In particular, the IJ found it extremely difficult to believe that "ointment" and "tablets" could treat the injuries Saldeen would have sustained had he been attacked by a gang of twenty to thirty people, tied to pillar and tortured by the police, and then beaten three to four times a day for two days. The IJ also found it significant that Saldeen provided no evidence that he suffered from any serious physical or emotional injuries. The only documents corroborating Saldeen's testimony were affidavits Saldeen represented to be from his father and cousin, affidavits which the IJ found to be of questionable authenticity and reliability. Moreover, the IJ noted that

4

conditions had changed in Sri Lanka because the UNP was no longer the controlling party.

The IJ also determined that Saldeen's fear that he would be persecuted by the Sri Lankan army because of the LTTE materials found at the printing press in Senkalady was unfounded, given that the Sri Lankan government and the LTTE had agreed to a cease-fire. Furthermore, the IJ found it implausible that Saldeen, as a supervisor, had no knowledge of the LTTE materials, and, therefore, to the extent that those materials assisted the LTTE, the IJ concluded that Saldeen was supporting terrorist activity and not eligible for asylum in the United States.

The BIA affirmed and adopted the IJ's decision. The BIA also clarified that, even assuming Saldeen's testimony was credible, he had not been subjected to persecution on account of a protected ground. The BIA explained that Saldeen was arrested and physically assaulted based on the suspicion that he was involved with the LTTE, a terrorist group.[1] Therefore, the Sri Lankan authorities had a "specific, legitimate interest in investigating unlawful activity," and were not motivated by Saldeen's political opinions. Similarly, the BIA found that Saldeen failed to establish that, if he returned to Sri Lanka, he would likely be persecuted on account of a protected ground.

---

[1]The BIA misinterpreted Saldeen's testimony. He claimed that the police held him in custody and physically assaulted him because they believed he was printing anti-UNP materials, not because they thought he was involved with the LTTE.

5

Saldeen filed this petition for review on January 16, 2006. We have jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252 (a). Generally, when the BIA issues a decision on the merits, we only review the BIA's decision. Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). However, we can look to the decision of the IJ to the extent that it was adopted by the BIA. Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005). As is true in this case, "when the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004).

## II.

Saldeen argues that neither the BIA nor the IJ provided a sufficient basis for their decision, and, thus, there cannot be a meaningful review. According to Saldeen, the BIA affirmed the IJ's decision that Saldeen was not persecuted on account of a protected ground. Saldeen contends that, because the IJ never made such a finding, there is nothing in the IJ's decision to review. Saldeen misreads the BIA's order. The BIA affirmed the IJ's decision for the reasons set forth by the IJ. However, the BIA also elaborated on those reasons. The BIA explained that, to the extent the Sri Lankan government was investigating Saldeen's involvement with a terrorist organization, he was not being persecuted on account of a protected ground. Therefore, since the BIA both adopted the IJ's rationale and provided an additional reason for denying Saldeen's application, there is an adequate basis for judicial review.

6

Saldeen argues that the BIA and the IJ erred in denying his application because the physical abuse inflicted upon him by the UNP supporters and the local police clearly constituted persecution on account of his political opinion.  The BIA held that, even assuming Saldeen's testimony is credible, he was not persecuted on account of a protected ground because the police had a legitimate interest in investigating Saldeen's involvement with the terrorist group, LTTE.  As Saldeen correctly points out, however, the BIA's reasoning is based on a faulty understanding of the alleged facts.  Saldeen testified that he went to work at that printing press where the LTTE materials were discovered only after he had been attacked by the UNP supporters and the local police.  Therefore, the physical attacks were not based on Saldeen's alleged connection to the LTTE.  Rather, according to Saldeen, he was beaten and tortured because he had printed posters criticizing a political party, the UNP.

However, the BIA's factual error does not require reversal of its decision.  Because the BIA adopted the IJ's decision, we also consider the IJ's reasons for denying Saldeen's application.  See Zhang, 405 F.3d at 155.  The IJ concluded that Saldeen's testimony regarding the attacks was not credible.  The IJ's adverse credibility determination is reviewed under the substantial evidence standard.  Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004).  It must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary."  Id. (quoting Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002)).

There is substantial evidence in the record to support the IJ's adverse credibility determination. Saldeen testified that he was attacked by a gang of twenty to thirty UNP supporters, and then beaten repeatedly by the police over the course of four days, during which they tied him to a pillar and tortured him. However, Saldeen admitted that, while he obtained some "ointment" and "tablets" for his injuries, he sought no professional medical attention. Also, Saldeen failed to produce any evidence indicating that he suffered serious physical or emotional injuries. The only corroborating evidence for the beatings and torture were affidavits allegedly submitted by Saldeen's father and cousin, and the IJ found those affidavits to be of questionable reliability. Since Saldeen's injuries were not consistent with the severity of the abuse he says he suffered and since what little evidence there is to corroborate Saldeen's testimony was rationally viewed by the IJ as questionable, we do not find that a contrary credibility determination is compelled. Therefore, the IJ properly concluded that Saldeen failed to establish past persecution.

IV.

Saldeen also claims that the BIA and the IJ erred in concluding that he did not have a well-founded fear of future persecution. Like an adverse credibility determination, a decision as to whether an applicant has a well-founded fear of persecution is reviewed under the substantial evidence standard. Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004).

Saldeen contends that the past persecution he suffered as a result of printing anti-UNP materials created a presumption of future persecution that was never rebutted. See 8

8

C.F.R. § 208.13(b)(1). In particular, Saldeen argues that the IJ incorrectly determined that conditions have changed in Sri Lanka. However, because we affirm the IJ's decision that Saldeen failed to prove past persecution, there is no presumption of future persecution and we need not address the issue of changed conditions.

Alternatively, Saldeen argues that he had a well-founded fear of future persecution because the Sri Lankan army found LTTE materials at the printing press where he had been working. In this context too, Saldeen contends that the IJ improperly speculated that conditions have changed in Sri Lanka following the cease-fire between the LTTE and the government. However, once again, we need not address the issue of changed conditions. The BIA held that, to the extent the Sri Lankan government was investigating Saldeen's involvement with the LTTE, it is not persecution on account of a protected ground. Even though the BIA incorrectly applied that rationale to Saldeen's claim of past persecution, the BIA correctly applied it to Saldeen's claim that he has a well-founded fear of future persecution. Saldeen believes that he will be persecuted by the army because they had linked him to the printing of LTTE materials. As the BIA recognized, the Sri Lankan government has a legitimate interest in investigating Saldeen's connection to a terrorist organization. Therefore, Saldeen has not shown that he would be persecuted on account of a protected ground. Cf. Shardar, 382 F.3d at 323 (finding that "the evidence supports the conclusion that Shardar was not persecuted on account of his political opinion; rather, he was legitimately prosecuted for participation in a violent political demonstration").

V.

For the foregoing reasons, we will deny the petition for review.