**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1593
_____

SUSHILA GURUNG,
                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                    Respondent

_____

On Petition for Review of a Decision
and Order of the Board of Immigration Appeals
(BIA No. A-089-905-850)
Honorable Eugene Pugliese, Immigration Judge

_____

Submitted under Third Circuit LAR 34.1(a)
December 20, 2013

BEFORE: JORDAN, VANASKIE, and GREENBERG, Circuit Judges

(Opinion Filed:  January 15, 2014)
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

This matter comes on before this Court on Sushila Gurung's petition for review of

a decision and order of removal issued by the Board of Immigration Appeals (the "BIA")

on February 5, 2013.  The BIA dismissed Gurung's appeal from an order by an

immigration judge ("IJ") of May 11, 2011, denying her application for asylum, withholding of removal, and protection under the Convention Against Torture (the "CAT"). The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3) and we have jurisdiction under section 242 of the Immigration and Nationality Act, 8 U.S.C. § 1252. Venue is proper in this Court because the IJ completed the proceedings in this Circuit in Newark, New Jersey. See 8 U.S.C. § 1252(b)(2).

Gurung, a citizen of Nepal, a country with a population of approximately 29 million, entered this country on August 15, 2007, as a nonimmigrant student to attend college in West Virginia. After two months, she abandoned that pursuit and moved to New York, where on August 14, 2008, she filed her application for asylum. She sought asylum on the basis of her alleged persecution by Maoist elements in Nepal that had been engaging in an insurgency against the government. At the hearing before the IJ, Gurung testified that, following in her father's footsteps, she joined the anti-Maoist Rashtriya Prajatantra Party and engaged in anti-Maoist activities. These activities included events traceable to July 22, 2002, when her father saw Maoists seeking to obtain recruits. Gurung's father reported his observations to the army, which thereafter confronted the Maoists. Then, on April 5, 2003, apparently in revenge for his report, Maoists kidnapped her father and, in doing so, beat Gurung and her mother after they attempted to interfere with the abduction. Gurung reported these events to the police, and the army recovered her father's body ten days later.

The following month Gurung learned of the location of a Maoist encampment and gave the police this information enabling them to capture three of the Maoists. The

2

Maoists learned that she had informed on them and sent her a letter demanding payment of 175,000 rupees. She did not make this payment and, instead, left the area in which she had been residing and on May 26, 2003, went to Kathmandu, Nepal's capital. But, in making that move, she did not leave the Maoists entirely behind, for, after she arrived in Kathmandu they made threatening phone calls to her. Eventually she came to this country where, as we have indicated, she sought asylum and relief from removal. Yet the Maoists persisted. Even after she left Nepal, they delivered a letter to her brother demanding money from her.

Following the hearing the IJ denied relief. In his opinion the IJ questioned Gurung's veracity and indicated that the threats she received and her father's abduction did not rise to the level of persecution. The IJ also noted that her evidence had not been corroborated.[1] Significantly, the IJ found that the government had demonstrated that, notwithstanding Gurung's claim that the Maoists had persecuted her, she was not entitled to relief because conditions in Nepal had changed fundamentally by reason of the government and the Maoists reaching a peace agreement in 2006. Moreover, the IJ indicated that Gurung could relocate within Nepal to avoid Maoist persecution.

Gurung appealed to the BIA, which dismissed the appeal on the merits, largely deferring to the IJ's findings. It held that even though Gurung claimed to have been beaten by Maoists, there was no evidence that she suffered serious injuries in this assault. It also held that she did not prove that she would have a well-founded fear of persecution

---

[1] We are adjudicating this case on the assumption that our recitation of the material facts is accurate.

by the Maoists if she returned to Nepal. Thus, she was not eligible for asylum or relief from removal and it dismissed her appeal. She then timely filed the petition for review leading to these proceedings.

Inasmuch as the BIA substantially relied on the IJ's conclusions in addressing Gurung's appeal, we review the decisions of both the IJ and the BIA. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Their findings of fact are conclusive unless any reasonable adjudicator would be compelled to reach a contrary conclusion. Id. at 243.

In order to qualify for asylum, an applicant, such as Gurung, must establish that she is a "refugee" as defined in 8 U.S.C. § 1101(a)(42). See 8 U.S.C. § 1158(b)(1); Shardar v. Ashcroft, 382 F.3d 318, 322-23 (3d Cir. 2004). A "refugee" is a an individual who is "unable or unwilling to return to [her] home country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. (internal quotation marks omitted). The applicant bears the burden of establishing her eligibility for asylum and can do so by presenting proof that she has suffered past persecution or has a well-founded fear of future persecution. See Abdille v. Ashcroft, 242 F.3d 477, 482 (3d Cir. 2001) (citing 8 C.F.R. § 208.13(a)). To establish that she has suffered from past persecution, the applicant must demonstrate that the government or forces that the government is either unable or unwilling to control engaged in the acts that she asserts constituted persecution. Abdulrahman v. Ashcroft, 330 F.3d 587, 591-92 & n.3 (3d Cir. 2003).

4

But an applicant making a showing that she has suffered from past persecution does not necessarily make a showing sufficient for relief from removal because the past persecution only gives rise to a presumption that she has a well-founded fear of future persecution.  Id. at 592 (citing 8 C.F.R. §§ 1208.13 (b)(1)(i) & (ii)).  However, the government can rebut this presumption by demonstrating that there has been a fundamental change in circumstances in the applicant's country of nationality to the end that she no longer has a well-founded fear of future persecution in that country.  8 C.F.R. § 1208.13(b)(1)(i)(A).  The government also can rebut a presumption that the applicant faces future persecution by showing that she reasonably could relocate within the country from which she seeks asylum to avoid harm.  Id. § 1208.13(b)(1); Abdulrahman, 330 F.3d at 592 n.3.  Thus, asylum is a forward-looking preventive remedy intended to preclude future persecution and is not granted simply because the applicant seeking asylum has suffered from persecution in the past.

When an alien seeks asylum in removal proceedings, her application is deemed to include a request for withholding of removal.  8 C.F.R § 1208.3(b).  An alien seeking withholding of removal must show a "clear probability" that she will face persecution in the country to which she will be removed.  INS v. Stevic, 467 U.S. 407, 412, 104 S.Ct. 2489, 2492 (1984).  If an alien cannot establish her eligibility for asylum she necessarily will be unable to demonstrate her eligibility for withholding of removal.  Zubeda v. Ashcroft, 333 F.3d 463, 469-70 (3d Cir. 2003).

To qualify for protection under the CAT, an alien must show that it is more likely than not that, if removed, she would be tortured by, or with the acquiescence of, the

5

government of the country to which it is proposed that she be removed. 8 C.F.R. § 1208.16(c)(2); Silva-Rengifo v. Att'y Gen., 473 F.3d 58, 70 (3d Cir. 2007). In this case we see no possible basis on which to conclude that Gurung qualifies for relief under the CAT and thus we do not discuss that possibility any further.

The parties address at length Camara v. Att'y Gen., 580 F.3d 196 (3d Cir. 2009), a case in which an applicant for asylum who had witnessed the kidnapping of a family member asserted that she had been persecuted because of that experience. This focus is understandable because the facts in Camara are in some respects similar to those here. We, however, take a different approach, for even if we regard as persecution Gurung's experience with respect to her father's kidnapping and death as well as the other events that she described, she is not entitled to relief in the light of a change in the political situation in Nepal. In this regard, as the IJ noted, the Nepal government and the Maoists have entered into a peace agreement formally ending the Maoist insurgency. Though not all Maoists have been appeased by this agreement, surely the agreement is highly significant as it has lessened the likelihood that Gurung will be persecuted if she returns to Nepal. We recognize that notwithstanding the peace agreement, some Maoist elements have continued their insurgent activity, but that activity has been concentrated in rural areas. Thus, the significance of the activity is limited with respect to Gurung because before she left Nepal, she was residing in Kathmandu, the capital. In these circumstances, we see no reason to doubt that Gurung can return to Kathmandu without fear of Maoist persecution.

In reaching our conclusion we note that this case is somewhat like Nbaye v. Att'y Gen., 665 F.3d 57 (3d Cir. 2011). In Nbaye, the petitioner claimed that he feared "returning to Guinea because he believes that if he returns he will be persecuted on account of his political opinion attributable to his membership in the Rally of Guinean People Party ('RPG')." Id. at 58. But during the course of our consideration of that case it came to our attention that there had been a change of government in Guinea and the RPG had come to power. Accordingly, we remanded the case to the BIA to consider the possible effect of this development. Here, as in Nbaye, there has been a significant political change in the petitioner's country of origin which diminishes the probability that if the petitioner, Gurung, returns to that country she will be persecuted.

Gurung's long absence from Nepal is another factor that makes it unlikely that she would be persecuted if she returned to that country. After all, we see nothing in the record to support a belief that Gurung is a person of any prominence in Nepal and we therefore believe that if she returns to Nepal, a country of nearly 29 million people, her return would go unnoticed. Furthermore, the Maoists seem to have little or no interest in her family as it has been operating a business in Kathmandu notwithstanding their presence.

The petition for review of the decision and order of the BIA dated February 5, 2013, will be denied.

7