**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1370
_____

ERIC DANSO,
                              Petitioner

v.

ATTORNEY GENERAL
UNITED STATES OF AMERICA,
                              Respondent

_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A208-920-948)
Immigration Judge: Leo A. Finston

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 15, 2017

Before:  GREENAWAY, JR., GREENBERG and ROTH, Circuit Judges

(Opinion filed: June 19, 2018)
_____

OPINION*
_____

PER CURIAM

        Eric Danso petitions for review of the Board of Immigration Appeals' final order

of removal.  For the reasons that follow, we will deny the petition for review.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Danso, a native and citizen of Ghana, is removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien who is not in possession of a valid, unexpired visa or passport. Danso crossed the border at San Ysidro, California in January, 2016. After he expressed to immigration officials that he feared returning to Ghana, he was taken into the custody of the Department of Homeland Security, pending a credible fear interview with an asylum officer. At his credible fear interview, Danso stated that he inherited his grandfather's cocoa farm in Ghana, and this angered his uncle because there was gold on the farm that could be mined. Danso explained that his uncle told him to give up the farm, and that his uncle threatened to kill him when he refused to do so. Danso further stated that his uncle was a fetish priest and had attempted to kill him using a deadly powder. Danso stated that he feared returning to Ghana because his uncle would again attempt to kill him. Danso added that his uncle was a member of the ruling political party, the National Democratic Congress ("NDC"), so the Ghanaian government and police would not protect him from his uncle.

The asylum officer determined that Danso had established that there was a significant possibility that the assertions underlying his claims could be found to be credible in a full asylum hearing; and that such assertions also established a credible fear of torture. The asylum officer noted, however, that Danso's fear bore no nexus to a protected ground. Following the asylum officer's credible fear determination, Danso was placed in removal proceedings.

Danso applied for asylum, withholding of removal, and protection under the Convention Against Torture, and submitted supporting materials, claiming that he was

2

the victim of political persecution in Ghana at the hands of the NDC. At his removal hearing in Immigration Court on August 10, 2016, Danso testified that he was thirty-seven years old, and that he was married with two children. He testified that he belonged to the New Patriotic Party ("NPP"), the main opposition party in Ghana. He said that his father, James Agyare, was also a member of the NPP, and that party meetings were held in his father's house and also in his house. He described his work with the party as a "grassroots . . . house to house campaign." Danso stated his occupation in Ghana as "music and farming." He described his music as gospel music, but also said that one of his songs had a political message. He explained that he decided to write a political song because "impunity and corruption [were] going on in [Ghana], and so he "decided to sing a song to criticize" the government. The song included a reference to being cursed if one voted for the NDC.

Danso testified that he left Ghana because, after radio stations began playing his political song on June 5, 2015, members of the NDC threatened him, his wife, and his father. According to Danso, on June 20, 2015, an NPP meeting was occurring in front of his home. Danso said that approximately twelve people dressed in civilian clothing approached the meeting, identified themselves as NDC members, and attacked him and other NPP members. Specifically, he said that they pushed him to the ground, grabbed his legs, and cut his wrists, fingers, and legs with a knife. He additionally testified that the people who attacked him attempted to "take [him] away," but were unsuccessful in doing so because other NPP members intervened to stop them, eventually forcing them to leave.

3

Importantly, Danso further testified that his brother, Nanayaw Agyare, was also beaten and later died as a result of the injuries he sustained. When questioned as to why he had failed to mention his brother's death in his asylum application or any of his written statements, Danso stated, among other things, that it is not customary in Ghana to list deceased relatives' names on documents, and that he was "too sad" to write his brother's name on the application. When questioned why his father similarly had failed to mention the death in *his* two written statements, Danso stated that his father was seventy years old, and was "now disturbed."

Danso further testified that he fled his home after the attack and hid in the jungle until his family could arrange for him to leave the country for Brazil. While travelling through Latin America on his way to the United States he was attacked and his passport was stolen. Danso testified that, following his departure from Ghana, his wife and children were violently attacked by NDC members. Danso testified that he last spoke to his wife two weeks before his hearing, and that she told him that he had "created a problem for her and their children." According to Danso, his wife said that NDC members came to their house, broke down the door, raped her, and beat and attempted to kidnap her and the children.[1] She and the children escaped because "people interfered;" they went to her mother's house, and he now did not know her whereabouts. Danso additionally testified that his father told him that NDC members came to his home, and

_____

[1] We note that in her affidavit Danso's wife stated that the Ghana Security Forces, on behalf of Yaw Sarfo, beat her and the children, and, before neighbors intervened, "they forced [her] almost into bed…." A.R. 194.

4

beat him and also beat Danso's step-mother. The NDC members asked if his father and step-mother were hiding him, and told them that, if they were, they should turn him in for "trying to bring disorder." His father also told him that a friend who recently traveled to Europe saw that the NDC had posted photographs of him throughout the airport in Ghana.

The Immigration Judge asked Danso why he never mentioned during his credible fear interview that NDC members had attacked him during a political meeting in front of his house. Danso acknowledged that it was the situation between him and his uncle that had "made [him] run from the country." However, he indicated that his problems with the NDC began after his political song was played on the radio, and he reiterated that when he arrived in the United States he had been tortured and was "very confused" and "disturbed." Danso told the IJ that he thought it was necessary to leave Ghana because his political song put him at risk. He claimed that the NDC is a violent party that punishes, tortures, and kills its critics and he said that the NDC would kill him, as they had his brother. He said that the NDC was in control in Ghana, and, because of upcoming elections, they were "killing anybody who [wanted] to disrupt [their] power."

At the conclusion of the removal hearing, the IJ denied asylum and withholding of removal, concluding that Danso's testimony was not credible because it differed fundamentally from his written submissions. The IJ reasoned that there was no mention of his brother's death in Danso's asylum application, in his responses to questions asked during his credible fear interview, or in any of his written statements. The IJ found Danso's explanation for the omission -- that he was in a distressed state when he arrived

5

in the United States and could not think clearly -- unsatisfactory because his later written submissions also did not contain any discussion of the attack. The IJ also noted that none of Danso's written submissions, including two affidavits submitted by his father, referenced the politically motivated murder of Danso's brother. Finding that the written statements of his father were detailed in other respects, the IJ could conceive of no rational reason why these statements omitted discussion of the murder for political reasons of a close family member.

The IJ further found that the report of United States Department of State on human rights in Ghana did not corroborate Danso's claim that political speech and political dissent is violently repressed in Ghana. The IJ noted that the report stated that the constitution and law provide for freedom of speech and press, and that the Ghanian government generally respected these rights. The IJ also found that Danso's claim that NPP members were being violently mistreated as part of the NDC's effort to remain in power not supported by the State Department report. Concerning Danso's CAT application, the IJ found no evidence that Danso would more likely than not be tortured by a Ghanian public official or person acting in an official capacity. The IJ ordered Danso's removal from the United States.

Danso appealed to the Board of Immigration Appeals, arguing that he had met his burden of proof with respect to asylum and should therefore be granted that relief. On January 17, 2017, the Board dismissed the appeal. The Board concluded that the record supported the IJ's adverse credibility determination. The Board explained that the asylum application and supporting documents, including statements prepared by Danso's

6

wife and brother-in-law, omitted Danso's testimonial claim that the NDC attacked him in retaliation for his anti-NDC song. Furthermore, the Board reasoned, the alleged attack represented the only incident of harm that Danso personally suffered; its omission from his documentary evidence thus cast serious doubt on his credibility. The Board further concluded that the IJ did not err in finding Danso's explanation -- that he was confused when he first entered the United States -- for this omission insufficient, because, as the IJ correctly noted, Danso's application and statements were submitted sometime after his arrival in the United States. The Board also observed that Danso's asylum application and supporting documents, including his father's statements, did not discuss that Danso's brother had been killed by the NDC. The Board noted Danso's explanation that he was confused and that his father was elderly and disturbed but concluded nonetheless that the IJ properly found it implausible that Danso and his father would omit this critical information from their written submissions. The Board further agreed with the IJ's finding that the country conditions evidence did not corroborate Danso's claim that political speech is violently repressed in Ghana, or that NPP members are targeted and attacked by NDC members. The Board additionally affirmed the IJ's denial of Danso's CAT application.

Danso has petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Where, as here, the Board issues its own decision on the merits, we review the Board's decision and consider the IJ's decision only insofar as the Board deferred to it. See Roye v. Att'y Gen. of U.S., 693 F.3d 333, 339 (3d Cir. 2012). Administrative findings of fact, including the agency's findings on credibility, are

7

reviewed for substantial evidence. See Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). We treat the agency's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992).

We will deny the petition for review. As a threshold matter, in his Informal Brief, Danso appears to challenge that the Government met its burden of proving that he was removable as charged, Petitioner's Informal Brief at 12-13. We reject this argument as meritless. Danso admitted that he arrived in the United States without his passport or a visa, and, accordingly, the record supports that he is removable as charged under Immigration & Nationality Act § 212(a)(7)(A)(i)(I), as an alien who, at the time of application for admission, is not in possession of a valid visa or passport. We also reject as meritless any suggestion that the Board failed to apply the correct standards when reviewing the IJ's decision, Petitioner's Informal Brief at 14. The Board correctly reviewed for clear error the findings of fact, including the determination of credibility, made by the IJ. See 8 C.F.R. 1003.1(d)(3)(i). Last, we reject as meritless any suggestion that the removal proceedings were fundamentally unfair, Petitioner's Informal Brief at 16-20; the administrative record establishes that the IJ accepted and considered all of Danso's evidence and that he was not prevented in any way from presenting his case.

An applicant for asylum has the burden of credibly and persuasively establishing that he is unable or unwilling to return to his home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality,

8

membership in a particular social group, or political opinion[.]"  8 U.S.C. §

1101(a)(42)(A); see 8 C.F.R. § 1208.13(a); Abdille v. Ashcroft, 242 F.3d 477, 482 (3d

Cir. 2001).  The applicant bears the burden of proving that he has suffered past

persecution or has a well-founded fear of persecution.   See id.; 8 C.F.R. § 1208.13(a).

Under the REAL ID Act of 2005, the IJ may assess credibility based on "the

totality of circumstances, and all relevant factors," including:

> … the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's … account, the consistency between the applicant's … written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1229a(c)(4)(C).  The IJ may make an adverse credibility determination

without regard to whether an inconsistency goes to the heart of the alien's claim.  See

Kaita v. Att'y Gen. of U.S., 522 F.3d 288, 296 n.6 (3d Cir. 2008).

Based on the "totality of the circumstances" and "all relevant factors," the record

in Danso's case does not compel the conclusion that his claim for asylum and

withholding of removal is credible.  As the agency concluded, Danso's asylum

application and supporting documents omitted significant aspects of his claim of political

persecution.  Specifically, although Danso offered detailed testimony concerning a

politically motivated NDC attack against him after his anti-NDC song was played on the

radio, his asylum application and written statements did not discuss such an attack.  His

9

asylum application made no mention of any politically motivated NDC attack though he testified that such an attack occurred on June 20, 2015, after his song was played on the radio; caused him knife wound injuries requiring medical treatment; and precipitated his departure from Ghana. Moreover, as the Board stated, written statements prepared by Danso's wife and brother-in-law also did not mention an NDC attack against Danso. This omission was significant because this alleged politically motivated attack represented the only instance of past physical harm Danso claimed to have suffered. We agree with the Board that Danso's explanation for these omissions is not persuasive.

In his Informal Brief, Danso attempted to explain the documentary evidence's omission of the attack by stating that he had a "lack of resources to retrieve legal documents from Ghana." Petitioner's Informal Brief at 8. He does not, however, explain how "legal" documents from Ghana would corroborate the alleged politically motivated NDC attack against him. Furthermore, his purported inability to obtain legal documents does not explain the fact that he did not mention the alleged attack in his asylum application or written statements, or the fact that his wife and brother-in-law similarly did not mention it in their written statements. Accordingly, the agency properly considered this detrimental to his credibility, see 8 U.S.C. § 1229a(c)(4)(C).

The agency also based its adverse credibility finding on the fact that Danso's asylum application and written statements, as well as the written statements of his father, did not reference the death of his brother. Danso testified that, like him, his brother was beaten during the NDC's politically-motivated attack on his home. He additionally testified that his brother later died as a result of the injuries he sustained in the attack.

10

However, neither Danso's written statements, nor two written statements from his father, each dated in July, 2016, mentions the death of Danso's brother at all. Furthermore, as elicited by the IJ during Danso's testimony, his asylum application also failed to mention his deceased brother, specifically in the section which allows applicants to list deceased relatives. As the death of his brother is related to the asylum claim, it is implausible that it would be omitted from the application. Danso's explanation for this omission -- that he was confused and that his father was old and disturbed – is unavailing because his and his father's statements are detailed in other respects.

Because the omissions identified by the agency are supported by record evidence, and were not adequately explained by Danso, substantial evidence supports the agency's adverse credibility finding. See Shardar, 382 F.3d at 323; 8 U.S.C. § 1252(b)(4)(B). Substantial evidence also supports the agency's conclusion that Danso's country conditions evidence did not corroborate his claim that political speech is violently repressed in Ghana and that opposition members are persecuted by the government on account of their political views. The agency thus was justified in considering uncorroborated Danso's claims that he was persecuted by the NDC as a result of producing an anti-NDC song.

Accordingly, the adverse credibility determination and lack of corroboration support the agency's conclusion that Danso did not meet his burden of proof with respect to his claim for asylum and withholding of removal. See Sandie v. Att'y Gen. of U.S., 562 F.3d 246, 251-52 (3d Cir. 2009). We further conclude that substantial evidence supports the agency's determination that there was insufficient evidence to show that

11

Danso would more likely than not be tortured "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). See also 8 C.F.R. § 1208.16(c)(2). We thus uphold the agency's determination that Danso did not establish his eligibility for CAT protection.

For the foregoing reasons, we will deny the petition for review.