

Villanova University School of Law

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-24-2007

# Youssef v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2131

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Youssef v. Atty Gen USA" (2007). *2007 Decisions.* Paper 391.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/391

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2131

———

YOUSSEF MAHROUS BASTA YOUSSEF,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

———

Petition for Review of the Order
of the Board of Immigration Appeals
(A78-688-815)
Immigration Judge:  Hon. Donald V. Ferlise

———

Submitted Under Third Circuit LAR 34.1(a)
September 17, 2007

Before: SLOVITER, SMITH and WEIS, Circuit Judges

(Filed: September 24, 2007 )

———

OPINION

SLOVITER, Circuit Judge.

        Petitioner Youssef Mahrous Basta Youssef seeks review of the decision of the

Board of Immigration Appeals ("BIA" ) which denied his application for asylum and ordered his removal from the United States.

## I.

Youssef, who came to the United States from Egypt as a nonimmigrant visitor for pleasure, overstayed and was charged on August 27, 2001 as subject to removal under 8 U.S.C. § 1227(a)(1)(B). Youssef appeared before an Immigration Judge ("IJ") on November 15, 2001, conceded that he was removable, and applied for asylum, withholding of removal, protection under the Convention Against Torture, and alternately, voluntary departure.

## II.

At his hearing before an Administrative Law Judge ("ALJ"), Youssef testified that he was born in Egypt and is a Coptic Christian. He also taught bible studies in Sunday School from 1984-89, worked as a science teacher beginning in 1988, and served in his church. Beginning in 1984, members of Jamaat Islamiah began to insult him when he was with priests on the street and threaten him by phone calls that told him to stop giving tours to foreigners because they were not Moslems.

On March 11, 1994, he heard gunshots at the monastery and found two monks and three tourists had been killed. He was later informed that Jamaat Islamiah was responsible. After this incident, he stopped working at the monastery for six months, but returned in January 1995. In response to questioning by the IJ about his response, Youssef stated that he had misunderstood his attorney's question and had thought he

2

asked about when "the first accident" occurred.

Youssef stated that between September of 1994 and January of 1995 he received threatening letters from Jamaat Islamiah warning him to stop working at the monastery. He stated that on January 7, 1995, he and his brother were attacked by Jamaat Islamiah while returning from church, and were beaten for fifteen to twenty minutes with knives and bicycle chains. He described his face as covered with blood but stated that the only injury he received was a cut on his finger. He explained his lack of injuries by stating that his brother was "hovering" over him, though he testified that neither of them went to the hospital nor did they report the incident to the police. During cross-examination, the government pointed out that in his affidavit, Youssef stated that he had bruises and scars from the beating. Youssef explained this discrepancy by stating that he had scars that healed, though the cut on his finger had not.

Youssef stated that in February 1997 the parents of his students protested his teaching of religion in school, but he claimed he had not taught religion and believed Jamaat Islamiah told the children to complain to their parents. He testified that afterwards he received letters from Jamaat Islamiah stating that they would stop his religious activities outside of school as well.

Youssef described an incident in August 1998 when he was shot at while going to the monastery, and he described hearing the shot and seeing a red flash of light as the bullet passed by him. He stated that he ran and hid in a cemetery, but he never called the police about the incident. He testified that his father received a phone call from Jamaat

Islamiah stating that next time they wouldn't miss Youssef and threatening to harm his father if he reported the incident to the police. When Youssef's brother, Gamal, testified about the same event, he described the incident as a beating rather than a shooting. When Gamal was asked on cross-examination about the contradiction between his own application and Youssef's testimony, Gamal changed his testimony to say that it was a shooting and that he remembered incorrectly because he only had secondhand knowledge of the event.

Youssef moved to Cairo in January 1999, where he and his brother set up a food distribution business. He testified that he received a letter from Jamaat Islamiah in July 1999 stating they would kill him. At this time Youssef decided to leave Egypt. Gamal testified that after Youssef left, Jamaat Islamiah demanded money from him and later destroyed his business. He did call the police but they took three hours to respond.

On cross-examination, the government noted that Youssef's documents indicated that he became a teacher in 1983, rather than in 1988 as he had stated. Youssef reaffirmed that he began teaching in 1988, and he explained that "in Egypt, when we renew the I.D. cards, it still . . . carries the date of issue of the old I.D." App. at 168. The government also asked why he had no letters from the priests he worked with, and Youssef claimed he had asked for a letter but the priests were afraid of reprisals from Jamaat Islamiah. Youssef also stated that his parents, sister, and one brother still lived in Egypt and were Christians.

Following two hearings, the IJ denied the applications for asylum, withholding of

4

removal to Egypt, and voluntary departure, and ordered Youssef and Gamal removed to Egypt. The IJ concluded that the brothers lacked credibility because their testimony was inconsistent and changed in response to their impeachment of each other, and he therefore found their applications for asylum were frivolous. The IJ further found that even if they were credible, they failed to prove the necessary persecution because the documentation showed that they were not persecuted by the Egyptian government and the government was not unable or unwilling to protect Coptic Christians from terrorists. Also, the IJ found they had failed to establish a well-founded fear of persecution because their refusal to use the police for protection was unjustified in light of the fact that no harm had come to their family. Finally, the IJ concluded that they did not qualify for voluntary departure because they stated they would not leave.

On appeal, the BIA agreed that Youssef and his brother "may well have embellished their stories of attack somewhat," particularly in light of the description of the fifteen to twenty minute attack with knife and chain that did not require hospitalization. App. at 2. However, it found that because the record supported that they were Coptic Christians and that Christians were regularly attacked in Egypt, they did show they suffered "some sort of attack and endure[d] threats," so their applications were not frivolous. App. at 2. The BIA affirmed the IJ's decision that they were not entitled to asylum because they failed to show their experience rose to the level of persecution, and they did not show the Egyptian government was unable or unwilling to protect them. It affirmed the denial of voluntary departure based on Gamal's statement that he would not

5

leave and Youssef's failure to provide evidence of his eligibility. Youssef, but not Gamal, filed this petition for review.[1]

**III.**

We review the decision of the BIA for substantial evidence, but where the BIA in its decision adopts or defers to the opinion of an IJ, we also review the decision of both the IJ and the BIA.  See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004).

To establish eligibility for asylum, an alien must demonstrate that he is a "refugee."  8 U.S.C. § 1158(b)(1)(A).  To qualify as a "refugee," an alien must show that he is unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]"  8 U.S.C. § 1101(a)(42)(A).  The persecution alleged must be at the hands of the government or individuals the government is either unable or unwilling to control.  Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002).

The requirements to establish past persecution and entitlement to asylum have been set forth frequently in our opinions and we need not repeat them here.  Whether an applicant has demonstrated "persecution or a well-founded fear of persecution" on account of a statutorily enumerated factor is a factual determination, which this court reviews under the substantial evidence standard.  Shardar v. Ashcroft, 382 F.3d 318, 323

---

[1]  Jurisdiction is based on 8 U.S.C. § 1252(a)(1).

6

(3d Cir. 2004).  Under this standard, findings of fact must be upheld unless "the evidence not only supports" a contrary conclusion, "but compels it."  INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992) (emphasis omitted); see also Chang v. INS, 119 F.3d 1055, 1060 (3d Cir. 1997).

Although the BIA found that Youssef had suffered some mistreatment due to one of the statutorily protected grounds (religion), it concluded that this mistreatment did not rise to the level of persecution and that it was not caused by the government or a group the government was unwilling or unable to control.  The evidence does not compel a contrary conclusion, so we must uphold these findings of fact.  See Elias-Zacarias, 502 U.S. at 481 n.1; Chang, 119 F.3d at 1060.

The BIA's determination that Youssef did not suffer past persecution was based on its finding that Youssef and his brother were not credible and therefore had exaggerated their claims that they had been persecuted.  The BIA found that their testimony, which was not supported by any corroborating evidence, only established that they had experienced some harassment and attacks.  Youssef therefore failed to show that he suffered conditions that were "so severe that they constitute a threat to life or freedom." See Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993).  The BIA's determination that Youssef lacked a well-founded fear of persecution is supported by Youssef's and Gamal's testimony.  The BIA did not find that Youssef lacked a subjectively genuine fear of persecution if he returned to Egypt, but it did not find that this fear was objectively reasonable because of the fact that some of Youssef's family, who are also Christians,

7

still remain in Egypt without harm.  See Gao, 299 F.3d at 272.

The BIA's conclusion that Youssef did not suffer at the hands of the Egyptian government is supported by the evidence, for Youssef complained of attacks by a "terrorist group," Jamaat Islamiah.  The BIA's conclusion that the government is not unable or unwilling to control Jamaat Islamiah is supported by U.S. Department of State religious freedom reports in the record which indicate that while intolerance of Coptic Christians is still a problem in Egypt, the government is taking steps to combat the problem of extremists.  Country reports are an appropriate resource for information about the political situation in other countries.  See Zubeda v. Ashcroft, 333 F.3d 463, 477-478 (3d Cir. 2003).  Additionally, Youssef's argument that the government of Egypt will not help protect him is undermined by his failure to seek such help from the police.  Moreover, Gamal testified, in contradiction, that the police would take action against Jamaat Islamiah if he reported their attacks.

Youssef also challenges the BIA's adverse credibility finding.  Adverse credibility findings are also subject to the substantial evidence standard and will be upheld unless a contrary result is compelled.  Gao, 299 F.3d at 272.  Youssef's assertion that the BIA found him to be credible is without support.  The BIA's conclusion that Youssef did not suffer persecution was premised on its determination that Youssef and his brother were not completely credible and had exaggerated their accounts of Jamaat Islamiah's attacks.  It based its adverse credibility finding on the inconsistencies and implausibility of the brothers' testimony.  An adverse credibility determination may be based on

8

"implausibility or inherent improbability" as long as there is "record support and specific, cogent reasons" for such a determination. Berishaj v. Ashcroft, 378 F.3d 314, 324 (3d Cir. 2004).

The BIA gave specific reasons for its determination that Youssef lacked credibility, and we have no reason to overturn that finding. The BIA noted, inter alia, the lack of documentary support for the attacks. Although an applicant's testimony may be sufficient evidence, "the BIA may sometimes require otherwise-credible applicants to supply corroborating evidence in order to meet their burden of proof." Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir. 2001). It was reasonable for the BIA to have desired corroboration of Youssef's questionable testimony. See id. However, he did not provide letters from his family or the priests he worked with describing the attacks, and his explanation that they feared reprisals for sending letters is unconvincing. Because substantial evidence supports the BIA's conclusions, they must be upheld. Gao, 299 F.3d at 272.

**IV.**

This court lacks jurisdiction over Youssef's claim for voluntary departure because 8 U.S.C. § 1229c(f) declares that "[no] court shall have jurisdiction over an appeal from denial of a request for an order of voluntary departure," and we do not consider that claim.

**V.**

Youssef's due process claims are without merit. His assertion that he was denied

9

due process because the IJ focused on "non-existent" inconsistencies in his testimony is in reality a challenge to the IJ's finding of adverse credibility and not a due process claim at all. See Jarbough v. Att'y Gen., 483 F.3d 184, 190 (3d Cir. 2007) (challenge to findings of fact not a due process claim). The BIA found that the IJ's credibility determination, based on inconsistencies in the brothers' testimony, was mostly correct. This portion of his argument on appeal is not subject to recharacterization as a due process claim. See id. at 190.

Youssef also argues that he was deprived of due process by not being treated with dignity and respect. We find no support in the record for that claim. The IJ permitted Youssef to begin testifying in English, and though Youssef switched to Arabic he was given the option to continue in English. Furthermore, as discussed above, some of the inconsistencies went to the heart of Youssef's claim, and it was therefore appropriate for the IJ to explore them. In addition, the IJ's questioning does not appear to have affected Youssef's ability to testify; indeed, he argues in his brief that he was able to provide consistent, credible testimony.

We find no merit in Youssef's contention that the IJ acted improperly by allowing the interpreter to "testify." Because Youssef received a fair hearing, his due process claim fails. See Bonhometre v. Gonzales, 414 F.3d 442, 448 (3d Cir. 2005).

## VI.

We have considered all of the arguments advanced by the petitioner, and will deny the petition for review.

10