

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-2009

# Jamil v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2412

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Jamil v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1251.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1251

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2412
_____

KHURRAM JAMIL,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(Agency No. A78 643 739)
Immigration Judge: Honorable Charles Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 27, 2009

Before: RENDELL, GREENBERG and VAN ANTWERPEN, Circuit Judges

(Filed: June 2, 2009)
_____

OPINION OF THE COURT
_____

PER CURIAM

        Khurram Jamil petitions for review of a Board of Immigration Appeals ("BIA")

decision dismissing his appeal of the Immigration Judge's ("IJ") decision denying his

applications for relief from removal. We will deny the petition for review.

Jamil is a native and citizen of Pakistan. He was admitted to the United States on November 2, 2000, with authorization to stay until January 2, 2001. Jamil had received a visa based on a petition filed by his fiancee, Saira Imdad, a United States citizen. In 2003, the Immigration and Naturalization Service issued a notice to appear charging that Jamil was subject to removal because he remained in the United States longer than authorized. Through counsel, Jamil conceded his removability and applied for asylum, withholding of removal, and relief under the Convention Against Torture.

Jamil testified that his family arranged a marriage between himself and Imdad, and that he married Imdad when he came to the United States. Jamil and Imdad lived together for eleven weeks. Jamil stated that Imdad wanted him out of her life, and that, in December 2000, they signed a separation agreement. They divorced in March 2001. Jamil stated that he would not have agreed to divorce if they were in Pakistan because divorce is unacceptable, and he would have faced strong consequences from family members and risked his life. Jamil submitted a news article about a woman who was shot by her brother-in-law because she had asked for a divorce. Jamil stated that the police do not do anything to stop these "honor killings."

Jamil further testified that, in 2004, Imdad contacted him and asked him to get

back together. Jamil, however, had since married another woman.[1] Jamil believed that Imdad had called him because her family was not happy that she was divorced, she was scared, and she wanted the divorce to look like it was his fault. Jamil stated that Imdad had wanted the divorce and that she was the plaintiff in the divorce proceedings.

Jamil also testified that he did not leave the United States after his divorce from Imdad because he wanted to finish his medical board exams, return to Pakistan as a surgeon, and work in a hospital that employs United States-trained doctors. Jamil stated that he wanted to go back to Pakistan, but he began receiving threats in March 2004. Jamil explained that Imdad's father told his father that he would make Jamil disappear. Jamil's father also told him that members of the military went to his family's home in Pakistan and threatened him. Jamil explained that Imdad comes from a military family. He believed that her family thought that he had initiated the divorce.

Jamil further testified that his father told him that the military men came again in August 2004 because they thought he was in Pakistan. Jamil's father told the men that Jamil was in America, and the men said that they would make sure that Jamil did not reappear, and that Jamil should make sure that he does not return to Pakistan. Jamil's mother took a picture of the incident, which was provided to the court. Jamil's father told Jamil that the men came a third time in November 2005 because they again had heard

---

[1] Jamil stated that he is unable to adjust his status based on this marriage because his visa to enter the United States was based on his marriage to Imdad.

3

reports that Jamil was in Pakistan. The men told Jamil's father that they would make sure he never saw Jamil again. A neighbor took pictures of the incident. Jamil also testified that his father received telephone calls threatening Jamil, and that his father had been unable to collect his government pension.

The IJ found Jamil's asylum application timely because it was filed within a reasonable time of when he learned about his in-laws' reaction to the divorce. The IJ also found Jamil's testimony credible.[2] The IJ also noted that Jamil provided corroborating evidence of the facts to which he testified, including photographs and affidavits. The IJ, however, concluded that Jamil did not meet his burden of proof to provide documentary evidence supporting his claim that men who obtain divorces are subject to honor killings in Pakistan. The IJ noted that the few documents Jamil submitted about honor killings discussed the killing of women.

The IJ further concluded that Jamil did not meet his burden of proof to show that he had a well-founded fear of persecution based on his membership in a particular social group. Although Jamil claimed that he belonged to a social group of "individuals in Pakistan who obtained divorces and then are subject to the wrath of the opposing spouse family," the IJ stated that Jamil sought to create a social group by the alleged underlying

---

[2]The Government had tried to impeach Jamil's credibility with letters provided by Imdad stating that they had divorced because Jamil was impotent. Jamil denied writing one of the letters and submitted medical evidence to show that he was not impotent. Noting that Imdad did not attest to the purpose of the letters, the IJ concluded that the letters did not compel an adverse credibility finding.

4

persecution. The IJ stated that Jamil did not show that he was a member of any group, and that there was no substantial, objective evidence showing that the practice of honor killing extended to divorced men. The IJ stated that Jamil's fear was based on a personal dispute, and that he had not shown that he was part of a particular social group or that the men want to harm him on account of his membership in a particular social group.

The IJ also rejected Jamil's claim of persecution on account of an imputed political opinion arising out of his refusal to comply with the societal anti-divorce mentality, finding no evidence supporting such a claim. Having concluded that Jamil did not meet his burden of proof on his asylum claim, the IJ found that Jamil did not satisfy the higher standard for withholding of removal. The IJ also denied relief under the Convention Against Torture, noting that the record did not establish that someone in Jamil's circumstances – a Pakistani man who divorced his wife – would more likely than not be tortured if he returned to Pakistan. Finally, the IJ denied Jamil's request for voluntary departure because he did not have a valid travel document.

The BIA dismissed Jamil's appeal. The BIA found no error in the IJ's denial of Jamil's voluntary departure request and declined to remand the case for further adjudication of this issue. Although Jamil had stated that he could produce a passport, the BIA was not convinced that the passport was previously unavailable. The BIA noted that the IJ gave Jamil additional time to obtain a travel document, and that Jamil was made aware of the need for a passport to qualify for voluntary departure when his case began in

2004.

The BIA also agreed with the IJ that Jamil failed to meet his burden of establishing his eligibility for asylum and withholding of removal. The BIA agreed that the objective evidence did not establish that Imdad's family would kill Jamil to avenge the family honor, and that Jamil's fear was not on account of a protected ground under the immigration statute. The BIA rejected Jamil's arguments that the IJ should have given him notice about any problems with his documentary evidence, and that the IJ erred in concluding that honor killings mainly involve women. The BIA noted that the Country Report on Human Rights Practices states that the victims of honor killings are generally women. The BIA also agreed that Jamil had described a personal dispute between himself and his ex-wife's family, rather than persecution because he was perceived as having flouted Muslim or Pakistani views of marriage and culture. This petition for review followed.[3]

Jamil first argues that the BIA erred in declining to remand the case for further adjudication of his request for voluntary departure. The Government, however, correctly argues that we lack jurisdiction to review a denial or a grant of a request for voluntary departure. See Obale v. Attorney General, 453 F.3d 151, 156 (3d Cir. 2006) (noting that 8 U.S.C. § 1229c(f) expressly precludes our jurisdiction to review a denial or grant of a

---

[3]The BIA also decided that Jamil's evidence did not establish that it was more likely than not that he would be tortured by the Pakistani government, or that the government would acquiesce to his torture. This ruling is not at issue.

6

request for voluntary departure).[4]

Jamil also disputes a statement by the IJ that much of his background evidence was undated and from unknown sources. He contends that, if the IJ had concerns about the evidence, due process required that the IJ notify him of any problems during the proceedings. The BIA rejected this argument, finding no basis for concluding that Jamil was treated unfairly and concluding that the IJ had assigned weight to Jamil's evidence based on its reliability. The BIA noted that this is a common aspect of a judge's job. We agree. Moreover, Jamil has not addressed the substance of his background evidence or explained how the evidence, if it was weighted differently, would support his claim that divorced men are subject to honor killings. Many of the articles that Jamil submitted discuss human rights abuses in Pakistan but do not address honor killings.

Jamil also challenges the BIA's conclusion that he did not satisfy his burden of proof to establish a well-founded fear of persecution on account of a protected ground. Whether an asylum applicant has established a well-founded fear of persecution is a factual determination reviewed under the substantial evidence standard. Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). Under the substantial evidence standard of review, factual determinations will be upheld unless a reasonable factfinder would be

---

[4]The Government asserts that we retain jurisdiction over questions of law and constitutional claims. Because Jamil challenges the factual determinations surrounding the denial of his voluntary departure request, we have not considered in this case our jurisdiction over legal questions and constitutional claims related to voluntary departure decisions.

7

compelled to conclude to the contrary. <u>Id.</u> Jamil has not shown that he is a member of a particular social group or that Imdad's family seeks to harm him on account of his membership in a particular social group.[5] As noted by the BIA, the Country Report reflects that women were often the victims of honor killings at the hands of their husbands or male relatives. In addition, there is no evidence demonstrating that Imdad's family seeks to harm Jamil on account of an imputed political opinion. A reasonable factfinder would not be compelled to conclude that Jamil has a well-founded fear of persecution on account of a protected ground.

Finally, we deny Jamil's request that we remand this matter based on evidence that became available after his hearing. Jamil was required to move to reopen the proceedings before the BIA if he wished to present new evidence. We also deny Jamil's request to remand this matter so that he can pursue alternative forms of relief.

Accordingly, we will deny the petition for review.

---

[5]Jamil has not developed in his brief a legal argument that he is a member of a "particular social group."