**REN DENG DONG, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES.**

No. 07–2787.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) Sept. 9, 2009.

Opinion filed: Nov. 24, 2009.

Ephraim T. Mella, Esq., Philadelphia, PA, for Petitioner.

Richard M. Evans, Esq., Brooke M. Maurer, Esq., United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, NYGAARD and ROTH, Circuit Judges.

OPINION

PER CURIAM.

Petitioner Ren Deng Dong is a native and citizen of the People's Republic of China who petitions for review of the Board of Immigration Appeals's ("BIA") decision affirming a decision of the Immigration Judge ("IJ") denying his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT"). For the following reasons, we will deny Dong's petition for review.

I.

Dong entered the United States without inspection on November 1, 2001 and was immediately detained. He was issued a Notice to Appear on November 8, 2001 that charged him as being removable under 8 U.S.C. § 1182(a)(7)(A)(i)(1). Dong was released from detention on bond on December 13, 2001. Dong thereafter conceded that he was removable but, on December 10, 2002, filed an application for

asylum, withholding of removal, and CAT relief asserting that he had been persecuted for opposing China's family planning policy.

At his merits hearing, Dong testified that on October 1, 2001, he and his four-month-pregnant girlfriend, Chuijin Lin, were refused a marriage certificate at their village's committee office because at 18 years old they were too young to marry under Chinese law. Dong argued with the officials, who forced him out of the office and telephoned the police, accusing Dong of assaulting them. When the police arrived and attempted to arrest Dong, he escaped with the help of villagers. He immediately went into hiding while Lin lived with his parents. Dong testified that while he was in hiding, family planning officials sought to arrest him and left a fine notice at his parents' house charging him with failing to obtain permission to become pregnant. He testified that his parents paid the fine. Two weeks after the incident with the village officials, Dong was smuggled into the United States. Upon his release from detention, Dong called Lin, who told him that she had been forced to have an abortion. He also spoke with his parents, who told him that the family planning officials still wanted to arrest him. He stated that he was frightened to return to China because he "thinks [he] will have big trouble, because they accused [him] of beating up government officials."

Substantial problems with Dong's testimony, affidavit, and documentation arose on cross-examination. He testified that he and Lin were married in a traditional Chinese ceremony, but that he did not mention this in his affidavit because he had no proof of the marriage and because the marriage was not recognized by the Chinese government. Additionally, he submitted an abortion certificate that listed Lin's age as 22 although the abortion os-

tensibly occurred two weeks after they had applied for a marriage license, when they were both 18 years old. Dong suggested that this was a clerical mistake. Further, Dong had testified on direct examination that he and Lin applied for a marriage certificate because she was pregnant, yet his affidavit states that they wanted to get married simply because they were in love, and that he did not learn of Lin's pregnancy and abortion until after he arrived in the United States. As to the incident with the government officials, he testified on cross-examination that the officials pushed and dragged him out of the office after he refused to leave. When they reached the street, the officials began beating him and he struck back. As a result, the official charges lodged against him were for "beating family planning officials."

The IJ denied Dong's application for asylum on the merits and because it was untimely. She made an adverse credibility determination, and concluded that Dong did not meet the standard for withholding of removal or CAT relief. The IJ explained that Dong "absolutely failed to establish that he was persecuted on account of violating the family planning policy" because "he did not establish that he has a wife, that she underwent an abortion, or that she was pregnant." The IJ further stated that based on Dong's own testimony, his behavior at the family planning office would make him the subject of legitimate prosecution rather than persecution. She then held that his claim was fraudulent, warranting a finding that his asylum application was frivolous.

The BIA affirmed the IJ's denial of relief, determining that the IJ offered "specific, cogent reasons for her adverse credibility determination." On appeal, Dong argued for the first time that Lin's "sterilization" was sufficient to demonstrate that he had suffered past persecution. The

BIA rejected this claim for lack of evidence and because it was the first time that he had raised this issue. The BIA vacated the IJ's determination that Dong's asylum application was frivolous.

Through counsel, Dong now petitions for review of the BIA's final order of removal.

## II

The government correctly argues that we lack jurisdiction to review the decision that Dong's asylum application was untimely. 8 U.S.C. § 1158(a)(3); *see also Sukwanputra v. Gonzales*, 434 F.3d 627, 633–34 (3d Cir.2006). We do, however, retain jurisdiction to review the denial of withholding of removal and CAT relief. *See Tarrawally v. Ashcroft*, 338 F.3d 180, 185–86 (3d Cir.2003). We review these decisions under the substantial evidence standard and will uphold the BIA's determinations "unless the evidence not only supports a contrary conclusion, but compels it." *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3d Cir.2003) (internal citation omitted).

Substantial evidence supports the adverse credibility determination.[1] *See Kaita v. Att'y Gen.*, 522 F.3d 288, 296 (3d Cir.2008) (explaining the pre-REAL ID Act standard of review). Dong's hearing was marred by contradictory information regarding his marital status, the circumstances of his altercation with family planning officials, whether Lin was forced to have an abortion, and the reason he was being sought by the authorities. The BIA appropriately found that these discrepan-cies "support the Immigration Judge's adverse credibility finding."[2]

Dong may rightfully fear prosecution for allegedly beating village officials, and fear of prosecution may constitute grounds for withholding of removal if it is motivated by one of the enumerated factors, such as political opinion, "and if the punishment under the law is sufficiently serious to constitute persecution." *Shardar v. Ashcroft*, 382 F.3d 318, 323 (3d Cir.2004). However, as in *Shardar*, substantial evidence supports the conclusion that Dong is not being prosecuted due to his political opinion; rather, the police are attempting to prosecute him for fighting with town officials because he argued with them after they would not give him a marriage certificate and he refused to leave the office. *See id.* at 324. Moreover, being dragged and/or pushed out of the family planning office and subsequently beaten up by officials, although troubling, does not rise to the level of persecution. *See id.*

Finally, there is no evidence that Dong would more likely than not be tortured if he is removed to China so as to entitle him to CAT relief. *See* 8 C.F.R. § 208.16(c)(2).

For the foregoing reasons, we deny Dong's petition for review.

---

1. Because Dong applied for relief before May 11, 2005, the REAL ID Act's standard governing review of adverse credibility determinations is not applicable to this case. *See Kaita*, 522 F.3d at 296.

2. Further, we note that to the extent Dong's claims of past persecution are predicated on his relationship to Lin, his credibility and his marital status are irrelevant, as we recently held that the Immigration and Nationality Act does not extend automatic refugee status to unmarried partners *or* spouses of individuals who have been forcibly subjected to family planning measures. *See Lin–Zheng v. Att'y Gen.*, 557 F.3d 147, 156 (3d Cir.2009).