**HEPING ZHONG, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 09–3593.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) March 19, 2010.

Filed: March 19, 2010.

Heping Zhong, New York, NY, pro se.

Eric H. Holder, Jr., Esq., Thomas W. Hussey, Esq., Jeffrey L. Menkin, Esq., United States Department of Justice Office of Immigration Litigation, Washington, D.C., for Respondent.

Before: SMITH, FISHER and GARTH, Circuit Judges.

OPINION

PER CURIAM.

Heping Zhong, proceeding *pro se,* petitions for review of a Board of Immigration Appeals ("BIA") decision dismissing his appeal of an Immigration Judge's ("IJ") decision denying his applications for relief

from removal. We will deny the petition for review.

Zhong is a native and citizen of China who lived in Fujian Province. Zhong entered the United States in 2006. The following year, Zhong applied for asylum and withholding of removal. The Immigration and Naturalization Service then issued a notice to appear charging that Zhong was subject to removal because he was present without having been admitted or paroled. Through counsel, Zhong conceded that he was removable as charged.

At his hearing, Zhong testified that he is married and has two children. He stated that, after the birth of his daughter in 1987, five family planning officials came to his house and forcibly took his wife in order to insert an IUD. Zhong's wife reported for periodic check-ups. In 1990, Zhong hired a private doctor to remove the IUD. His wife became pregnant and went into hiding at her cousin's home. Officials went to Zhong's house looking for his wife and Zhong told them that she was visiting relatives and that he would have her report for a check-up when she returned. When Zhong's wife failed to report, officials returned to the house and took their electronic appliances.

Zhong's wife and infant son returned home in February 1991 to see Zhong's father, who was very ill. His father passed away the next morning. Zhong testified that, on the same day that his father died, five officials forcibly took his wife away to be sterilized because they had violated the family planning policy by having a second child. Zhong stated that he argued with officials and tried to stop them from taking his wife. As a result, two men restrained him by pressing his head on the ground. Zhong's nose bled and another person hit and kicked him, resulting in bruises. Zhong stated that officials learned about his wife's return because he lived in a small village and everyone knew about his father's death. Zhong further stated that he was assessed a fine, which he paid. Zhong left China in 2006, fifteen years after these events. Zhong stated that he will be arrested if he returns to China because he departed illegally with the help of smugglers.

The IJ ruled that, under *Matter of J–S–*, 24 I. & N. Dec. 520 (A.G.2008), Zhong was not eligible for asylum based on his wife's sterilization. In considering whether Zhong was eligible for relief based on his own opposition to China's family planning policies, the IJ found Zhong not credible because he omitted from his original asylum application and statement his testimony that officials had harmed him.[1] The IJ further opined, that, even if Zhong did tell his former attorney about his resistance and resulting harm, he did not establish past persecution as a matter of law because his harm did not rise to the level of persecution. The IJ also concluded that Zhong did not establish a well-founded fear of persecution, noting that there was no evidence that he was in danger of sterilization and that the country report did not support such a fear based on his illegal

---

1. The IJ explained that, while it credited Zhong's testimony about his wife's sterilization, it did not credit his testimony about his harm, which he had submitted to show persecution based on his "other resistance" to family planning policies. *See* 8 U.S.C. § 1101(a)(42) (defining refugee for asylum purposes). The IJ noted that Zhong's asylum application was filed in 2007, when the definition of refugee included "other resistance" to family planning policies, and there was no reason not to include the harm he suffered. The IJ also noted that the application specifically asked whether Zhong had suffered any harm. Although Zhong blamed his former attorney for the omission, the IJ noted that Zhong had not claimed ineffective assistance of counsel nor had he submitted any evidence showing that he had told his former attorney about his harm.

departure. Finally, the IJ found no evidence supporting a claim under the Convention Against Torture ("CAT").[2]

The BIA dismissed Zhong's appeal. The BIA did not address the IJ's adverse credibility determination but agreed with the IJ that, even if Zhong were credible, he failed to satisfy his burden of proof for asylum or withholding of removal. The BIA rejected Zhong's argument that the IJ did not consider his personal persecution, noting that the IJ discussed his claim at length. The BIA also rejected Zhong's contention that asylum was warranted based on his illegal departure from China. The BIA explained that the record did not establish that any punishment that would be imposed would constitute persecution or torture as opposed to prosecution and legitimate punishment. The BIA also affirmed the IJ's conclusion that Zhong had not shown that he is eligible for CAT protection.

We review the decision of the BIA where, as here, the BIA did not adopt the IJ's decision or defer to the IJ's findings. *Voci v. Gonzales,* 409 F.3d 607, 612 (3d Cir.2005). We review the BIA's findings under a substantial evidence standard, which requires that we uphold the BIA's findings unless the evidence compels a contrary conclusion. *Shardar v. Ashcroft,* 382 F.3d 318, 323 (3d Cir.2004).

Zhong argues in his brief that he was persecuted based on his own opposition to China's family planning policies. He asserts that he refused to tell the government his wife's whereabouts, resulting in the confiscation of their electronic appliances. He also states that he tried to stop officials from taking his wife to be sterilized and officials beat and injured him. We agree with the BIA and the IJ that the harm that Zhong suffered did not rise to

the level of persecution. *See Fatin v. I.N.S.,* 12 F.3d 1233, 1240 (3d Cir.1993) (noting persecution does not encompass all treatment our society regards as unlawful or unconstitutional, but includes threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom).

Zhong further argues that the BIA failed to consider that the economic punishment the government imposed on him may amount to persecution. We disagree. The BIA stated in its decision that the fine and destruction of his property did not rise to the level of persecution. Zhong has not shown that the evidence compels a contrary conclusion. Zhong did not submit evidence at his hearing to support a claim of economic persecution. Although Zhong states in his brief that his wife used a sewing machine confiscated by officials to make a daily living, Zhong did not testify to this fact or submit any other evidence in this regard. Zhong inconsistently stated in his brief to the BIA that he "was the only person to make money at [his] home." A.R. at 7. Similarly, there is no evidence supporting Zhong's statement in his brief that the fine imposed by Chinese officials equaled his family's five-year annual gross income. Zhong also stated in his brief to the BIA that the fine constituted his annual total income.

Zhong also argues that he should be considered a refugee for purposes of asylum based on his wife's forced sterilization because in China both a husband and wife have joint responsibility to comply with family planning policies. He argues that any punishment is joint punishment. The authority construing the definition of a refugee, however, is to the contrary. *See Lin–Zheng v. Attorney General,* 557 F.3d 147, 156–57 (3d Cir.2009) (en banc) (hold-

---

**2.** It is unclear whether Zhong sought protection under the CAT. Zhong's asylum application indicates that he was seeking CAT protec-

tion, but his former attorney represented that he was only seeking asylum and withholding of removal. A.R. at 79–80.

ing Congress did not intend "to extend refugee status to anyone other than *the individual who* has either been forced to submit to an involuntary abortion or sterilization, has been persecuted for failure or refusal to undergo such a procedure, or has a well-founded fear of that occurring in the future").

Zhong's remaining contentions warrant little discussion. He asserts that the IJ's adverse credibility finding is not supported by the record, but the BIA did not address that finding. The BIA concluded that, even if credible, Zhong did not satisfy his burden of proof. Zhong also asserts that the BIA did not discuss whether he has a well-founded fear of persecution based on his opposition to the family planning policies. Zhong, however, did not raise an argument in his brief to the BIA that he had such a fear.

Accordingly, we will deny the petition for review.